## Duncan Coal Company v. Thompson's Administrator.

(Decided February 6, 1914).

### Appeal from Muhlenberg Circuit Court.

1. Master and Servant—Mines—Duty to Prop—Peremptory Instruction.—Where in an action by a miner against the mine owner for personal injuries, the evidence is conflicting as to whether it was the duty of the mine owner to timber or the miner to prop the mine, a peremptory instruction based on the failure of the miner to prop is properly refused.

2. Master and Servant—Mines—Instructions.—Where a mine owner and miner are working under a contract which requires the company to timber all "bad places" not caused by the miner's own negligence, it is error to leave to the jury the question of "bad places" without giving them any guide to go by.

3. Trial—Jury—Competency—Interest in Case—Practice.—It is error to permit counsel for plaintiff, suing for injuries received by an employee, to ask jurors whether they own stock in an insurance company indemnifying defendant against loss, unless the question is asked in good faith. The good faith of counsel depends on whether or not he has reasonable grounds to believe that the defendant carries indemnity insurance and that one or more of the jurors are interested in the insurance company. If the court entertains any doubt as to the good faith of plaintiff's counsel, he should discharge the jury panel at plaintiff's cost.

WM. H. YOST, HOWARD & GRAY and YOST & LAFFOON for appellant.

MILTON CLARK and W. C. JONSON for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

W. J. Thompson, while working in a mine of the W. G. Duncan Coal Company, was killed. In this action for damages, his administrator recovered judgment in the sum of $4,500. The coal company appeals.

Thompson, who was 46 years of age, had been working as a miner for about two years. A contract made by the United Mine Workers of America with the Employers' Association, of which the coal company was a member, was introduced in evidence without objection from either side. Section 9 of that contract provides: "The company shall lay all roads and timber all 'bad places' not caused by the miner's negligence." The evidence of plaintiff tends to show that the roof of the room where he was at work was "crumbly" and full of seams, and on this account it could not be made reasonably safe by ordinary propping. On the other hand the evidence for the defendant is to the effect that the roof was not bad and could have been rendered reasonably safe had it been properly propped by the decedent. It was also shown that a few hours before decedent's death, which was caused by the falling of slate, decedent had been cautioned by the mine foreman and assistant mine foreman in regard to the condition of the room, and had been told to prop it. Defendant also proved that it was plaintiff's duty to prop within ten feet of the face of the coal, and that none of the props had been set by him within that distance. On these two points plaintiff proved that a prop was found on top of the fallen slate, which indicated by its appearance that it had been set by the decedent, and that props could not be set nearer the face of the coal on account of a "break-through."

Defendant insists that the court erred in failing to give a peremptory, in view of the evidence that decedent had been warned of the dangerous condition of the roof and had been told to prop it, and that he failed to prop it within the required distance. On the issue, however, as to whether or not it was the duty of the decedent to prop, or of the defendant to timber, the evidence is conflicting. If the condition of the roof was such that it was the duty of the decedent to prop it, there can be no recovery. On the other hand, if the roof was in such condition that it was the duty of the company to timber, and

by reason of its failure to do so the decedent, while exercising ordinary care for his own safety was injured and killed, the fact that the company's foreman told the decedent to do the propping, when it was not his duty to do it, will not relieve the company from liability.

Instruction No. 1 is as follows:

"The court instructs the jury that if they believe from the evidence that the roof in the defendant company's mine and the place where the same fell on deceased was a 'bad place' within the meaning of the contract between the parties, which was read in evidence to the jury, and that by reason thereof said room where deceased was killed was not a reasonably safe place for deceased to work in and that the defendant company or its agents superior in authority to the intestate knew of said unsafe or defective condition, if any, before the deceased was killed and that the deceased did not know, and by the use of ordinary care could not have known thereof, and that the deceased was killed by slate or rock from the roof of said mine falling on him, then and in that event the jury will find for the plaintiff."

This instruction is erroneous because, without giving them any guide for their direction, it leaves to the jury the determination of the question whether or not the roof was a "bad place" within the meaning of the contract between the parties. The court should have defined a "bad place" within the meaning of the contract.

In view of the fact that there was no evidence tending to show that the condition of the roof was caused by decedent's negligence, the court, on another trial, in addition to the usual instructions on contributory negligence and the measure of damages, and the usual instructions defining ordinary care and negligence, will instruct the jury as follows:

1. A "bad place" within the meaning of the contract is a place in the roof which cannot be made reasonably safe by the ordinary propping usually done by the miner himself.

An ordinary roof is a roof that can be made reasonably safe by the ordinary propping usually done by the miner himself.

2. If you believe from the evidence that the roof in the room where decedent was at work was a "bad place" as defined by instruction No. 1, and that such condition, if it existed, was known to defendant, its agents and servants charged with the duty of timbering the roof, or by the exercise of ordinary care could have been known to them, and was not known to plaintiff, and was not so obviously dangerous as to charge a person of ordinary prudence with notice thereof, and that defendant failed to timber the roof, and by reason thereof the decedent, while exercising ordinary care for his own safety, was injured and killed, you will find for the plaintiff; unless you so believe, you will find for the defendant.

3. If you believe from the evidence that the roof in question was an ordinary roof within the meaning of instruction No. 1, and that decedent failed to prop same, and by reason thereof was injured, you will find for the defendant.

Counsel for defendant further complain of the action of the trial court in permitting plaintiff's attorney to ask the jurymen whether any of them owned any stock in the insurance company which carried the indemnity policy on defendant's mine. When the objection was made the attorney for plaintiff stated that he had been informed that the coal company carried insurance in a company that would pay any loss that might result to defendant on the trial of the case. The court overruled the objection on the ground that it came after the jury had qualified, and the list had been passed on and accepted by both parties, and it was, therefore, too late. We have recognized the propriety of such a question where counsel for plaintiff has information that the defendant has indemnity insurance, and that some member of the jury is interested in the insurance company, and the question is asked in good faith. Dow Wire Works Co. v. Morgan, 96 S. W., 530; Owensboro Wagon Co. v. Boling, 107 S. W., 264. This privilege, however, is not only liable to abuse, but is frequently abused. While the question is asked ostensibly for the purpose of determining the bias or interest of the juror, in a great majority of cases the sole purpose of such a question is to bring to the attention of the jurors the fact that any verdict they may render will impose no liability on the defendant, but will be paid by some one else. No

argument is necessary to show how prejudicial it is to the defendant to call the attention of the jury to this fact. A doubtful case may turn on the point that the real defendant will not suffer by the verdict. Cases should be tried on their merits. If plaintiff have a meritorious case he should win. He should not win merely because some one other than the defendant will have to bear the loss. In view of the constant abuse of the privilege in question, we conclude that the question should never be asked unless asked in good faith, and the good faith of plaintiff's counsel will depend on whether or not he has reasonable grounds to believe that defendant carries indemnity insurance, and that one or more of the jurors are in some way interested in the insurance company. If the question be asked, and the trial court entertains any doubt as to the good faith of plaintiff's counsel in asking the question, the court should, if asked, discharge the panel at plaintiff's cost.

Judgment reversed and cause remanded for new trial consistent with this opinion.