MARIE RYAN, Guardian, Appellee, v. H. TRENKLE et al., Appellants.

**NEW TRIAL: Verdict—Excessiveness—$5,100 for Personal Injury.** A verdict for $5,100 (reduced by the court to $4,000), consequent upon an accident resulting in the breaking of the leg of a 14-year-old boy, with no permanent detrimental after-results, held excessive, notwithstanding the reduction by the court.

**TRIAL: Misconduct in Argument—Fact That Injury Was Insured Against.** The persistent suggestion, during the trial of a personal injury action, and in the presence of the jury, that the injury was insured against, constitutes misconduct.

**TRIAL: Instructions—Unsupported Issue.** It is quite elementary that an issue wholly without support in the testimony must not be submitted to the jury. So held with reference to the issue whether defendant had her motor vehicle under control at the time of an accident.

**TRIAL: Instructions—Permitting Speculation on Unpleaded and Unproved Negligence.** The court, after submitting to the jury the one issue *whether defendant had her car under control at the time of an accident,* must not also instruct that negligence might be based on a finding that defendant "did *something* or omitted to do *something* which an ordinary prudent person would not do or omit to do."

**NEGLIGENCE: Acts Constituting—Last Clear Chance.** No basis exists for submitting the doctrine of the "last clear chance" on a

record which demonstrates that the defendant was not negligent up to a fraction of a second before the accident occurred.

Headnote 1:   17 C. J. p. 1107.   Headnote 2:   35 C. J. p. 394; 36 C. J. p. 1128.   Headnote 3:   28 Cyc. p. 49.   Headnote 4:   28 Cyc. p. 49; 38 Cyc. p. 1612.   Headnote 5:   28 Cyc. p. 49.

*Appeal from Dubuque District Court.*—D. E. MAGUIRE, Judge.

OCTOBER 17, 1924.

REHEARING DENIED FEBRUARY 20, 1925.

ACTION for damages for personal injuries resulting from a collision of the plaintiff's bicycle with defendant's automobile. There was a verdict for the plaintiff for $5,100, and judgment was entered thereon for $4,000.   The defendants appeal.—*Reversed.*

*Kenline, Roedell & Hoffmann* and *Lyon & Willging,* for appellants.

*Hurd, Lenehan, Smith & O'Connor,* for appellee.

EVANS, J.—The plaintiff brings her action as the guardian of her son, the injured person, Harold Ryan.   The defendant Marie Trenkle was the driver of the car, and the defendant H. Trenkle is her father, and the owner of the car.   The accident in question occurred on the evening of September 22, 1921, at about 5:30, and at or near the intersection of Main Street and Ninth Street in the city of Dubuque.   Main Street is a north and south street.   It is intersected at right angles by Ninth Street, which runs east and west.   The defendant Marie Trenkle approached the intersection from the south, driving along the east side of Main Street.   Young Ryan on his bicycle approached the same intersection from the north, riding along the west side.   Near the center of the intersection was a metal plate, referred to in the record as the "policeman."   At the time of the accident, there was no other moving traffic or vehicles at this point on either street.   The defendant Marie Trenkle, driving a Cadillac automobile, came upon the intersection, and, passing north of

the metal plate, turned west on Ninth Street. She was driving at a rate of speed not exceeding five miles an hour. At about the time she turned west, Ryan entered the intersection at its northwest corner. Seeing the approach of the automobile, he also turned west on Ninth Street. A moment later, the right fender or the right end of the bumper of the automobile collided with the bicycle, whereby the boy and the bicycle fell to the pavement, and the front wheel of the car passed over the boy's leg, breaking the same.

The claim of the defendant is that, though the boy turned west on Ninth Street, he suddenly started to cross Ninth Street in front of the automobile; that the defendant immediately swerved her car to the left and towards the southwest, in an effort to avoid contact with him. The claim of the plaintiff is that the automobile bore down upon him, and that he was unable to get out of its way. It appears without dispute that both vehicles moved at the same rate of speed, and that neither accelerated its speed. It appears likewise that, when the car was brought to a stop, immediately after the front wheel had passed over the leg of the plaintiff, it was headed toward the southwest, and that the point of the accident was about 15 feet south of the center line of Ninth Street, and that it was a few feet west of the west lot line of Main Street. That is, the culmination of the accident took place on Ninth Street, and on the south side thereof. The distance between the curbs on each of these streets was 40 feet, and the width of the sidewalks on each was 12 feet. The foregoing are the salient facts in the case, to which further details will be noted in the later discussion.

I. One ground of complaint by appellant is that the verdict was excessive, and was manifestly the result of passion and prejudice, and that such passion and prejudice had been intentionally aroused by counsel for plaintiff, in bringing to the attention of the jury matters which were not proper for their consideration.

1. NEW TRIAL: verdict: excessiveness: $5,100 for personal injury.

The injury consisted in breaking both bones of the leg, at a point three inches above the ankle. The patient was confined in a hospital for a period of twelve weeks. He suffered very great pain for the first three or four days. The recovery was normal. The bones united with true alignment

and without shortening.  He returned to school in February
following, and since that time has been able to engage normally
in all the sports of the playground.  During the summer follow-
ing, he was an active member of the baseball team, and was a
full back on the football team.  The damage sought in this action
is for pain and suffering, and for loss of earning capacity after
attaining his majority.  At the time of his accident, he was a
little less than fourteen years of age.  There was no claim
made herein for any medical or hospital expense.  These ele-
ments presumably accrued to his father, and were involved in
another action.

That the amount of the verdict was excessive, and was the
result of some miscarriage of judgment on the part of the jury,
is beyond fair debate.  A citation of some of our more recent
cases will be deemed a sufficient discussion of this point.  *Leh-
man v. Minneapolis & St. L. R. Co.*, 153 Iowa 118; *Gilbert v.
Vanderwaal*, 181 Iowa 685; *Collinson v. Cutter*, 186 Iowa 276;
*Sandvig. v. Nichtern*, 196 Iowa 1124; *Evans v. Roberts*, 172
Iowa 653.

The trial court recognized the excessive character of the
verdict, and reduced it to $4,000.  If, upon this record, the ex-
cessive verdict could be cured by a reduction, we do not think
the reduction made by the trial court was adequate.

It is quite apparent that the verdict was influenced by ex-
traneous matter.  One of such extraneous matters was the dili-
gent suggestion, by examination of jurors and otherwise, that
the damage sued for had been insured against.
2. TRIAL: mis-
conduct in argu-    The impression thus conveyed to the jury nat-
ment: fact that
injury was in-     urally was that the action was a mere method
sured against.
                   of collecting insurance.  This seems to be a
growing practice of trial stratagem, which is not calculated to
secure a fair trial, and which incurs the increasing disfavor of
the courts.  *Putnam v. Pacific Monthly Co.* (Ore.), 130 Pac.
986 (45 L. R. A. [N. S.] 338); *Faber v. Reiss Coal Co.*, 124
Wis. 554 (102 N. W. 1049); *Pekin S. & M. Co. v. Ramey*, 104
Ark. 1 (147 S. W. 83); *Pierce v. United Gas & Elec. Co.*, 161
Cal. 176 (118 Pac. 700); *Duncan Coal Co. v. Thompson's Admr.*,
157 Ky. 304 (162 S. W. 1139); *Inland Steel Co. v. Gillespie*, 181

Ind. 633 (104 N. E. 76); *Stratton v. Nichols Lbr. Co.*, 39 Wash. 323 (81 Pac. 831); *Mithen v. Jeffery*, 259 Ill. 372 (102 N. E. 778).

In the light of what transpired on the trial concerning the subject of insurance, the excessive character of the verdict was a sufficient ground to warrant a new trial. It became evident that the defendants had not had a fair consideration from the jury on any issue.

II. The specific negligence charged in the petition was that the defendant did not have her car under proper control, and that she did not give any warning signal of any kind. The court submitted no other specification of negli-

3. TRIAL: in-
structions: un-
supported issue.

gence than that of want of proper control. This was done by Instructions 9 and 10, as follows:

"9. You are instructed that, at the time of the happening of this accident, it was the statutory law of this state that, upon approaching a crossing or intersection of public highways, and in traversing such crossing, the person operating a motor vehicle shall have the same under control, and shall reduce the speed to a reasonable and proper rate. You are instructed that a violation of the statutory law of this state, as above set out, would constitute negligence.

"10. In considering the first proposition, which plaintiff must prove by a preponderance of the credible evidence, viz., 'that plaintiff's ward was injured through the negligence of the defendant Marie Trenkle, and that such negligence was the proximate cause of his injuries,' you are instructed that you should examine into all of the facts and circumstances in evidence, including the fact that the automobile which the defendant Marie Trenkle was driving was a powerful instrumentality; that it was being driven upon the public streets of the city; the speed at which the said Marie Trenkle was driving said automobile, and whether or not she was violating the statutory law of this state, as set out in Instruction No. 9; where plaintiff's ward was at the time she first observed him; where he was upon the street; and what he was doing up until the time he was struck; what the defendant Marie Trenkle, at and preceding the time of the collision with plaintiff's ward, did, or omitted to do, with regard to controlling or stopping her car, under the cir-

cumstances which surrounded her; the condition of the street; the *presence* or absence of other persons or objects on the street; and every other fact and circumstance in evidence in this case which will tend to prove or disprove whether the defendant Marie Trenkle, at the time of the collision with plaintiff's ward, was acting as a person of ordinary prudence and caution would act, under the same or similar circumstances. If, after considering all of the evidence in this case, you find that the defendant Marie Trenkle did something which a person of ordinary prudence and caution would not have done, or failed or omitted to do something which a person of ordinary prudence and caution would not have failed or omitted to do, under the same or similar circumstances, or if you find that the defendant Marie Trenkle, at the time of the accident, was violating the statutory law of this state, as set out in Instruction No. 9, then the defendant Marie Trenkle would be negligent, and you should proceed to a consideration of the second proposition."

These instructions are assailed by the appellant on several grounds. We shall have no occasion to consider all of them. Was there any evidence before the court which warranted the submission to the jury of this issue of proper control? The evidence on both sides discloses that the defendant was driving very slowly, and apparently very carefully. The witnesses on both sides estimated her rate of speed at two, three, four, and five miles an hour. No witness placed it higher than five miles an hour. No evidence is pointed out which tends in any manner to show want of proper control or failure to reduce the rate of speed, unless it can be said that the fact of the accident itself proves want of proper control. To so hold would be to wholly beg the very question at issue. It will be noted that, in this connection, the court quoted the statute, and instructed the jury that a violation of that statute would be negligence. There is no support in the evidence for such an instruction. If the defendant was negligent, it was not because she had not reduced her speed, nor because her car was not under proper control. At the close of the evidence, the defendant moved for the withdrawal of this particular issue from the consideration of the jury. The motion should have been sustained.

This state of the evidence emphasizes also the error com-

plained of in the giving of the last part of Instruction 10, wherein the jury is permitted to find the defendant negligent if she

4. TRIAL: instructions: permitting speculation on unpleaded and unproved negligence.

"did something which a person of ordinary prudence and caution would not have done, or failed or omitted to do something which a person of ordinary prudence and caution would not have failed or omitted to do." The jury should not have been permitted to speculate upon any form or specification of negligence not specified in the petition and not set forth in the instructions. Under the evidence for the plaintiff, it appears that the boy had reached the northwest corner of the intersection when the defendant began the turn west around the plate. The intersection corners were rounded. When the plaintiff saw the approach of the car, he turned west. His speed was the same as that of the car. The boy himself testified as follows:

"She came up there and turned at the intersection, and I was just about opposite the west curb of Main Street then,—the northwest curb of Main,—when she swung the car to go up Ninth Street."

He also testified that he turned west on Ninth Street. The street was clear. There was no difference in the rate of speed of the vehicles. All that was necessary for the safety of both was that the plaintiff should keep to the right and the defendant to the left. The defendant did bear to the left. She did not in any sense crowd to the right. The testimony for the defendants is that, while occupying this relative position, the boy suddenly tried to cross the street in front of the auto, and that the defendant quickly swerved her car to the left to avoid collision. The collision actually occurred south of the center line of Ninth Street, at a distance estimated by witnesses on both sides at fifteen feet. There is no room for finding, upon this evidence, that the accident could have happened if the plaintiff had kept to the right side of the street. The only explanation offered for the location of the point of accident is that the defendant pursued the plaintiff and pushed him along. If he was moving on the right side of the street, how could she have pushed him in a southwesterly direction? There is no consistent explanation in the record, of the presence of the boy at the place of the accident, unless it be that he did try to cross the street in front of

the slowly moving automobile.   Manifestly, it was physically impossible for him to have been placed there through any control or want of control of the automobile.

III.   The court also submitted to the jury the question of last clear chance.   We see no basis for it in this record.   If the defendant was not negligent in the first instance, there was no

5. NEGLIGENCE: acts constituting: last clear chance.

opportunity to become negligent thereafter. The accident happened in a mere moment,—"in a flash," as described by one of plaintiff's witnesses.   The claim is predicated upon the alleged pursuit of the plaintiff by the defendant.   This claim is not only negatived by physical impossibility, but is wholly inconsistent with plaintiff's other testimony.   The plaintiff introduced evidence that an automobile going at five miles an hour could be stopped within five feet.   Within five feet from where?   It would cover such distance in five sevenths of a second.   In this case, the automobile did stop within five feet from the place where boy and bicycle fell to the pavement.   To split a second of time by the mere estimate of witnesses, and to use such estimate as a basis for a cause of action, is a speculation too refined and too uncertain to warrant its adoption as a precedent.

Upon this record, there was a failure to show negligence. The judgment below is, accordingly, reversed.—*Reversed.*

ARTHUR, C. J., and PRESTON and FAVILLE, JJ., concur.