FRED KELLER, Appellee, v. J. H. DODDS, Appellant.

No. 43961.

FEBRUARY 8, 1938.

Hallagan, Fountain, Stewart & Cless and C. A. Smedal, for appellant.

Dyer, Jordan & Dyer and Nichol & Nichol, for appellee.

MILLER, J.—On the 20th day of September, 1935, between 9 and 9:30 p. m. appellee, accompanied by three persons, was driving a Ford V-8 coupe owned by himself, north on primary highway No. 60 in Boone County. This highway was macadamized, or surfaced with a combination of crushed rock and oil, and at the place of the accident, hereinafter referred to, the traveled portion was approximately 24 feet wide. The appellant was engaged in the general trucking business, had been so engaged for a period of about five years, and held a permit from the Iowa Railroad Commission to operate a truck. At the time of the accident appellant was driving his truck south upon said highway No. 60, accompanied by another person. At a point on said highway, about ten rods south of the boundary line between Boone and Hamilton Counties, there is a slight hill, which lowers going toward the north, and at the time in question the automobile of appellee had gone over the top of this hill and was proceeding to the north, and when about a third of the way down said hill there was a collision between the automobile of

appellee and the truck of appellant; said collision consisting of a sideswiping of said automobile and truck, or of the left side of said automobile and the left side of said truck colliding. This collision damaged appellee's automobile, and likewise injured his left elbow, in that the bones in said elbow were comminuted, or all broken in small pieces; as a result of which appellee is left with practically no elbow joint, and this condition apparently will be permanent.

It is the claim of appellee that at the time of and immediately preceding the collision he had been operating his car at a speed of approximately 40 miles an hour, and that appellant was operating his truck at a speed of about 40 miles an hour. It is also his claim that for some time prior to the accident he had been traveling on the east or his right-hand side of the highway, and upon observing the lights on appellant's truck approaching him from the north, he pulled over to the edge of the road on the east side thereof, and that the collision between the automobile and the truck occurred three or four feet east of the center of said highway. It is the contention of appellant that immediately prior and up to the time of the accident he was traveling on the west, or his right-hand side of the traveled portion of said highway, and that upon observing the lights of appellee's car approaching him from the south, he continued on the west side of the highway, or, in fact, pulled his truck almost to the extreme west side of the highway, and that at the time of the collision the right wheels of his truck were about 12 inches from the west edge of the traveled surface. It is likewise the contention of appellant that at said time he was not driving his truck at a speed in excess of 15 miles an hour. It will be observed from the foregoing that it was the firm contention of both parties, that each of said parties was well to the right of the center of the traveled portion of said highway, and that the opposing party violated the rule of law requiring the parties when meeting upon a highway to turn to the right and give one-half of the traveled way.

Appellant, in his first assignment of error, claims that the court erred in overruling his motion for new trial, on account of misconduct of the jury, in that arriving at their verdict the jury considered matters, facts and issues not in evidence, and based their verdict, in part at least, on assumptions, specula-

tions and facts not supported in the testimony, nor properly in issue in the case.

As regards this item of error, one of the attorneys for defendant, in his motion for new trial, attached an affidavit charging the jury was guilty of misconduct in considering the question of whether or not defendant carried public liability insurance; and upon hearing of said motion eleven of the twelve jurors were called as witnesses and gave testimony as to what occurred in the jury room in this regard. One of the jurors, W. J. Hall, Jr., in said hearing testified that it was talked over among the jurors as to whether or not defendant carried liability insurance, and he stated that it was asserted defendant surely had insurance, or that it was reasonably certain he had insurance, inasmuch as he was a common carrier. He further testified that he knew it was necessary for the defendant to have such insurance, and that he told the other members of the jury that the defendant must have carried insurance. He also testified that he had not felt the defendant was completely to blame for the accident; that he thought the evidence did not show defendant was liable, and that this talk concerning insurance influenced him in agreeing to a verdict in favor of plaintiff, and that his consent to the verdict was based on the fact that defendant might have insurance, and that some insurance company would pay the judgment. The juror Harry B. Sexton testified that the juror Hall had made the remarks stated above; that said remarks were made during the deliberations of the jury and before it had agreed on a verdict for plaintiff in any amount, and that it was urged by members of the jury that even if the jury should find for the plaintiff that defendant would not have to pay the judgment; and that following that line of argument, he finally surrendered his honest conviction and agreed upon a compromise, believing the defendant would not have to pay the judgment. However, on cross examination this juror testified that his verdict was based on the thought that it would be better to compromise than leave the case undecided, and that the talk on insurance had no effect on his verdict. Again on redirect examination this juror stated that the talk concerning insurance did have some effect upon his consent to a verdict for the plaintiff, and again on recross-examination he stated that the result would have been the same if there had been no talk concerning insurance. The remaining nine jurors

who were examined at this hearing all testified that there was some talk relative to defendant carrying insurance, or that the carrying of insurance by all truckers was compulsory under the state law, but all remaining nine jurors testified this talk concerning insurance had no effect whatever upon them in arriving at the verdict.

This court has at different times passed upon the question of the propriety of permitting counsel to introduce evidence to the effect that defendant was carrying liability insurance, but only one case has been brought to our attention, wherein this court has had before it the question of misconduct of the jury based upon conversation of the jury during their deliberations relative to defendant carrying insurance. This is the case of Bauer v. Reavell, 219 Iowa 1212, 260 N. W. 39, in which case three jurors made affidavits to the effect that the matter of insurance was brought up and discussed in the jury room, whereas eight or nine others of the jurors made affidavits denying that any such discussion took place, and Mr. Justice Hamilton in writing the opinion therein, stated that in view of the claimed discussion in reference to insurance being controverted by at least eight of the jurors, and in the absence of any showing that the misconduct, if any, was such as to materially affect the rights of complaining party, that the defendant would not be entitled to a new trial on that ground.

**▮▮▮** However, we have a different situation in the instant case, as the testimony of the entire eleven jurors who were examined agreed that the subject of defendant having liability insurance on account of being a trucker was discussed. Likewise, two of the jurors stated that such discussion influenced them in arriving at their verdict, but in view of the fact that the juror Sexton testified both ways, depending upon whatever side was examining him, leaves the question as to whether or not this talk influenced him extremely doubtful. However, in this connection, we are of the opinion that the portion of the testimony of the juror Hall, to the effect that this talk in the jury room influenced him in arriving at his verdict, should be entirely disregarded, and, also, that any testimony of the juror Sexton to the effect that the talk concerning insurance influenced him in arriving at his verdict should be disregarded. It has long been established that jurors should not be allowed to impeach their own verdict, and it seems to us that to permit a

juror to testify by affidavit or otherwise, to the effect that a certain conversation influenced him and caused him to reach a certain verdict, is violative of the rule that jurors should not be allowed to impeach their verdict, and that statements that such talk did in fact influence them inheres in the verdict itself. It is, of course, permissible to show the facts as to what actually transpired in the jury room, in order that the court may ascertain whether or not the jury was guilty of misconduct, and whether or not such misconduct was prejudicial, but to permit a juror not only to testify as to the facts of what actually transpired, but also to permit said juror to testify that such facts influenced him in arriving at a verdict, would be clearly violative of the rule prohibiting jurors to impeach their own verdict, and such matter of necessity must inhere in the verdict.

The question as to what matters inhere in a verdict has undoubtedly been a perplexing one, and one in which it is not possible to harmonize the decisions. In the early case of Wright v. Illinois & M. Telegraph Co., 20 Iowa 195, the court reviewed not only the prior Iowa cases thereon, but cases from other jurisdictions, and after showing the conflict therein states:

"While we do not feel entirely confident of its correctness, nor state it without considerable hesitation, yet we are not without that assurance, which, under the circumstances, justifies us in laying down the following as the true rule: That affidavits of jurors may be received for the purpose of avoiding a verdict, to show any matter occurring during the trial or in the jury room, which does not essentially inhere in the verdict itself, as that a juror was improperly approached by a party, his agent, or attorney; that witnesses or others conversed as to the facts or merits of the cause, out of court and in the presence of jurors; that the verdict was determined by aggregation and average or by lot, or game of chance or other artifice or improper manner; but that such affidavit to avoid the verdict may not be received to show any matter which does essentially inhere in the verdict itself, as that the juror did not assent to the verdict; that he misunderstood the instructions of the court; the statements of the witnesses or the pleadings in the case; *that he was unduly influenced by the statements or otherwise of his fellow jurors,* or mistaken in his calculations or judgment, or other matter resting alone in the juror's breast." (Italics ours)

In State v. Dudley, 147 Iowa 645, 653, 126 N. W. 812, 815, is contained the following statement:

"Affidavits of jurors that they have been unduly influenced by their fellows, or of the reasons for assenting to the verdict, or of improper arguments resorted to in the jury room, or that they did not assent to the verdict, or that it was not the result of their deliberate judgment, or they did not understand the instructions of the court as these matters inhere in the verdict, are incompetent, and cannot be received to impeach the jury's findings." (Citing Iowa cases and other jurisdictions.)

In the case of State v. Kirk, 168 Iowa 244, 257, 150 N. W. 91, 95, the defendant was charged with murder and was convicted of manslaughter. The jury during its deliberations called for and were furnished with a Code of Iowa, and therein looked up the penalty. An affidavit of one of the jurors stated in substance that the information received therefrom coupled with his belief that the judge had the power to impose a nominal or minimum penalty, and that, under the recommendation of the jury would do so, caused the jury to agree upon the verdict; and had they not so believed they would not have agreed to a verdict. The court in discussing this affidavit states:

"Only the affidavit of Verry then can be regarded as asserting the influence of what occurred on the verdict and this portion should be disregarded as inhering in the verdict. Undoubtedly, affidavits of facts occurring in the jury room after submission of the case and even that the jury talked of these are competent. Douglass v. Agne, 125 Iowa 67, 99 N. W. 550; Brown Land Co. v. Lehman, 134 Iowa 712, 112 N. W. 185, 12 L. R. A. (N. S.) 88.

"But it is not competent to show by affidavit of jury what influenced the verdict, for this is necessarily mere matter of opinion and essentially inheres in the verdict itself. State v. Dudley, 147 Iowa 645, 126 N. W. 812. If what occurred, however, amounted to misconduct and was of such a character that it likely did influence the result of the trial or this may be said to have been reasonably probable, it is enough, regardless of any showing of such influence in fact, to invalidate the verdict and exact a new trial."

It seems to us that the condemned portion of the affidavit in

the case of State v. Kirk, supra, is practically analogous with the testimony herein concerning influence, and that the above quotation therefrom states the correct rule of law. In adopting this rule we realize that in some of the opinions upon this subject that statements have been made to the effect that the jurors, either by their affidavits, or by testimony, showed that certain improper statements had influenced them in reaching their verdict, but it is our opinion that these statements were inadvertently placed in the opinions and that we should not permit a violation of the rule that matters inherent in the verdict cannot be shown, by permitting a juror to tell what influence, if any, certain statements may have had in causing him to reach a certain verdict.

 It then becomes necessary to determine whether or not the fact that the jury, during its deliberations, discussed the question of liability insurance, and that one or more of the jurors made the statement that it was compulsory under the laws of this state for a trucker to carry liability insurance, constitutes such misconduct on the part of the jury as to require a new trial. It is statutory law, Code 1935, §5105-c14, that every operator of a truck holding a permit from the Iowa Railroad Commission must carry liability insurance. It is likewise established beyond question that every person is presumed to know the law. To now agree with the contention of appellant and grant a new trial on account of the fact that these matters were discussed in the jury room, would mean that, regardless of the fact that every person is presumed to know the law, yet the reference thereto would constitute prejudicial misconduct.

In the Tennessee case of Bourne v. Barlar, 17 Tenn. App. 375, 67 S. W. 2d 751, 753, wherein the defendant was not in any classification in which liability insurance was compulsory, statements were made in the jury room relative to the fact that defendant did have liability insurance, and that some of the jurors believed that some insurance company would have to pay any judgment rendered against defendant; and therein the court in commenting thereon, states:

"The assignment that the jury was guilty of misconduct in hearing statements that defendant had liability insurance, and the court erred in not ordering a new trial for this reason, is not well made. It is insisted that a new trial should have been

granted for the reasons: First, because such statements were irrelevant; and, second, they were very prejudicial to the defendant. Of course, irrelevant statements about the case in the jury room are highly improper, and should not be tolerated by the courts, and those guilty should be punished for contempt; but they do not constitute reversible error unless they are liable to prejudice the jury and to affect their verdict. The evidence on the question of liability insurance was vague. There were vague statements and references to liability insurance. Some of the jurors testified that they thought something was said about her having insurance, but didn't remember any positive statements that she had insurance, but supposed that she had. Some thought it would cost her a lot of money, and others believed the insurance company would have it to pay.

"We think all these statements about insurance were improper, but did they or were they liable to affect the verdict? We think not. In this enlightened age it is common knowledge, and everybody knows, that almost every owner of an automobile carries liability insurance, hence everybody knows how it is obtained and the manner of protection. Each juror knows that it is unjust and wrong to award a verdict against a defendant simply because he may have insurance and when he does so he stultifies himself and is unworthy to sit as a juror. Each juror who has intelligence enough to be a juror knows that when he, by his verdict, unjustly takes money from a defendant, he does him a very great wrong.

" 'Insurance against loss or damage from accident or negligent conduct is so universal that jurors, as well as courts, must be assumed to be cognizant of this fact, and hence evidence thereof will not be as likely to create prejudice as it might have been before this method of business became so universal.' 56 A. L. R. 1548; Marion Construction Co. v. Steepleton, 14 Tenn. App. 127, 148."

As is stated in the above quotation, it is a matter of common knowledge that automobile owners are generally protected by liability insurance, and as, of course, by the very terms of the statutory law the operators of all trucks are compelled to carry such liability insurance, it seems to us that the fact that a juror stated in the presence of his fellow jurors that which every member of the jury was presumed to know, should not be construed to constitute prejudicial misconduct.

While it is true that this court has at times reversed for failure to grant new trials wherein the question of insurance has been injected into a lawsuit, yet an analysis of those cases leads one to the conclusion that these reversals were not based upon misconduct of the jury in considering those matters, but upon misconduct of counsel in injecting into the record irrelevant and immaterial matters concerning insurance. It is not in every case in which the matter of insurance has been injected that a new trial has been granted. In the case of Bauer v. Reavell, supra, wherein one of the plaintiff's witnesses was permitted to testify that the defendant said he carried liability insurance, it was held that the same was part of an admission against interest, and of the *res gestae,* and in that particular case it was held that there was no misconduct of counsel in improperly injecting that evidence into the lawsuit. It is apparent that it is not in every lawsuit wherein the word "insurance" has been mentioned, or wherein statements have been made to the effect that the defendant carried liability insurance, that a new trial has been granted, but only in those cases wherein counsel has improperly injected the question of insurance into the action. In view of that situation, it hardly seems reasonable that this court should adopt a policy or lay down a rule of law that in every instance wherein the subject was talked over in the jury room, and especially where the talk was in reference to the law that every juror is presumed to know, that the same should be construed as prejudicial misconduct, and for that reason we are of the opinion that the action of the trial court in overruling appellant's motion for new trial, on account of the alleged misconduct of the jurors, was proper.

█■█ The remaining assignments of error all consist of objections to instructions. The appellant excepts to a portion of instruction XII, which instruction is as follows:

"The second ground of negligence alleged by the plaintiff against the defendant is that defendant failed to give one-half of the traveled way upon the highway by turning to the right when meeting the plaintiff's automobile. Now, you are told that it is the law of this state that persons in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right; and you are further instructed that a failure upon the part of

anyone to observe this law is prima facie evidence of negligence. The defendant in this case, when he met the plaintiff, was required by the law to exercise due care under all the circumstances confronting him at the time and place in question. He was duty bound upon meeting the plaintiff to yield one-half the traveled way unless a reasonably careful and prudent person would do otherwise. *He was duty bound to drive his truck as a reasonably careful and prudent person would drive it, taking into consideration the kind and character of the road, the width of the road, the condition of the surface of the road, the width of the truck, and all other conditions and circumstances existing at the time and place in question; and a failure upon the part of the defendant to drive his truck as a reasonably careful and prudent person would drive a similar truck under like and similar circumstances would be negligence."* (Italics ours.)

The exception to this instruction is lodged against the italicized portion thereof, it being the claim of appellant that the court, in adding the italicized portion thereto, injected into the action a ground of negligence that was not plead by appellee, and thereby permitted the jury to speculate on the evidence and find the defendant guilty of an act of negligence that was not in the lawsuit. In the submission of the case to the jury upon the question of appellant's negligence, the trial court submitted but three specifications of negligence, which are as follows: First, in operating his truck at a high and dangerous rate of speed; second, in failing to give one-half of the traveled way upon said highway by turning to the right when meeting plaintiff's automobile; third, in driving upon said highway a motor truck more than six feet in width without electric lamps or reflectors so placed as to outline the limits of the body.

It will be noticed that in instruction XII, in the portion thereof preceding the italicized portion, the trial court instructed the jury as to the law relative to the claim of plaintiff that defendant failed to give one-half of the traveled way upon said highway by turning to the right, to which portion of the instruction no exceptions were taken. The italicized portion of said instruction does not in fact amplify, or make more clear or distinct, the preceding portion of the instruction to which no exception is taken, but said italicized portion of the instruction is in fact almost a dragnet specification of general negligence,

and, as is shown hereinbefore, there was no such specification of negligence involved. The particularly objectionable feature of the italicized portion is the fact that the trial court completes the same by stating to the jury that a failure upon the part of the defendant to drive his truck as a reasonably careful and prudent person would drive a similar truck under like or similar circumstances would be negligence. This certainly was not a matter in issue and there was no occasion whatever for the giving thereof, in view of the fact that the same was not included in the specifications. While it is true, as is claimed by appellee, that the court in other portions of the instructions did inform the jury that they were to consider only the three specifications as above set out, and likewise were not to consider any other negligence of any kind, if any there might be, not alleged by the plaintiff, yet the court uses instruction XII for the specific purpose of instructing the jury as to the second ground of negligence, and in instructing thereon states that "a failure upon the part of the defendant to drive his truck as a reasonably careful and prudent person would drive a similar truck under like and similar circumstances would be negligence." While it may be, .in view of the admonition of the court in other instructions to consider only the pleaded specifications of negligence, that the intention was that the italicized portion of instruction XII was to be completely disregarded by the jury, yet it is impossible to state that the jury would construe said portion to be meaningless and to have no connection with the lawsuit whatever.

In the case of Ryan v. Trenkle, 199 Iowa 636, 640, 200 N. W. 318, 320, a very similar situation was presented to this court. Therein the only specification of negligence was "lack of control". The court instructed thereon in instructions 9 and 10, and in a portion of the instruction 10 stated that the jury should consider:

"What the defendant Marie Trenkle, at and preceding the time of the collision with plaintiff's ward, did, or omitted to do, with regard to controlling or stopping her car, under the circumstances which surrounded her; the condition of the street; the *presence* or absence of other persons or objects on the street; and every other fact and circumstance in evidence in this case which will tend to prove or disprove whether the defendant Marie Trenkle, at the time of the collision with plaintiff's ward,

was acting as a person of ordinary prudence and caution would act, under the same or similar circumstances. If, after considering all of the evidence in this case, you find that the defendant Marie Trenkle did something which a person of ordinary prudence and caution would not have done, or failed or omitted to do something which a person of ordinary prudence and caution would not have failed or omitted to do, under the same or similar circumstances, or if you find that the defendant Marie Trenkle, at the time of the accident, was violating the statutory law of this state, as set out in Instruction No. 9, then the defendant Marie Trenkle would be negligent''.

This court condemned the giving of that portion of instruction No. 10, and stated:

''The jury should not have been permitted to speculate upon any form or specification of negligence not specified in the petition and not set forth in the instructions.''

In Faatz v. Sullivan, 199 Iowa 875, 200 N. W. 321, the plaintiff had pleaded specific allegations of negligence, and in one instruction the court instructed on general negligence, and, in discussing said instruction, this court referred to the opinion in Ryan v. Trenkle, supra, holding that the action of the trial court therein was erroneous.

It seems to us that the action of the trial court in the instant case, in adding the italicized portion to instruction XII, was clearly wrong, and that the same constituted prejudicial error.

■■■ In one of the instructions upon contributory negligence the court gave instruction No. XVI, as follows:

''You are instructed that under the law, the plaintiff was likewise duty bound to give one-half of the traveled portion of the highway to the defendant when meeting him, either by turning to the right or remaining to the right, and a failure upon his part to observe this law would be prima facie evidence of negligence, but would not be conclusive, and may be overcome by showing that under the facts and circumstances existing at the time of said meeting, it was impossible to make such turn, or that under the facts and circumstances existing at the time and place of such meeting, ordinary care and prudence would not require him to turn to the right in passing the defendant. If the plaintiff was negligent in this respect, and said negligence

contributed in any manner or in any degree to the damages complained of, then the plaintiff cannot recover in this case.''

The appellant objects to this instruction for the reason that it places a more onerous degree of care upon the defendant than upon the plaintiff. It will be noticed that said instruction XVI instructs the jury on plaintiff's duty to yield one-half of the traveled way upon meeting the truck operated by defendant, and it is the claim of defendant that said instruction does not require the same degree of care on the part of plaintiff as the court required of defendant, in instruction XII heretofore set out. In objecting to said instruction XVI, the appellant complains that in instruction XII the jurors were told not only that the violation by the defendant of the statute would be prima facie evidence of negligence, but were further permitted to find the defendant negligent under the general allegation and statement set out in the last sentence of said instruction; whereas in instruction XVI the court told the jury that a violation of said statute on the part of plaintiff would be prima facie evidence, but that the same would not be conclusive and might be overcome by a showing of impossibility to comply, or legal excuse; the defendant contending in connection therewith that the record in no way showed any facts justifying submission of a legal excuse for plaintiff, and further claiming that the facts and circumstances of the accident were such that the degree of care on the part of the defendant arose no higher than that imposed upon plaintiff, and that the parties should have been subjected to the same standard of care in that regard.

In reference to the portion of this objection by appellant, wherein he claims a more onerous degree of care was imposed upon him than upon appellee, on account of the last sentence of instruction XII, we wish to state there is no merit in that contention. The trial court, in instructing upon contributory negligence, covered the field thereof in more than one instruction, and in instruction XV upon that subject, in substance, gave an instruction almost identical with the last sentence of instruction XII.

As stated, appellant also objects to that portion of instruction XVI wherein the court states that the failure to observe the law would be prima facie evidence of negligence, but would not be conclusive, and that the same may be overcome by show-

ing that under the facts and circumstances existing at the time of said meeting, it was impossible to make such turn, or that under the facts and circumstances existing at the time and place of such meeting, ordinary care and prudence would not require him to turn to the right in passing defendant. In this connection it is to be noted that it was the steadfast claim of plaintiff throughout the entire trial that he was at all times well to the right of the center of the traveled portion of the highway, and that he did not, by any pleading or by any evidence, ever make any claim other than that he had completely complied with the provisions of that statute, Code 1935, §5019. This instruction states to the jury that a failure to comply with this law would constitute prima facie evidence of negligence upon the part of plaintiff, and then states ''that the same may be overcome by showing that under the facts and circumstances existing at the time of said meeting it was impossible to make such turn, or that under the facts and circumstances existing at the time and place of meeting, ordinary care and prudence would not have required him to turn to the right.'' As hereinbefore mentioned, no evidence whatever was offered by the plaintiff and he at no place ever made any contention that it was impossible for him to make a turn to the right, and, likewise, no evidence of any kind was offered showing any facts or circumstances that would not require him to turn to the right. As will be recalled, the testimony of the plaintiff was that immediately preceding the accident he was traveling upon the east or right-hand side of the center of the traveled way, and that upon observing the lights of defendant's truck approaching, he then pulled his car to the edge of the road on the east side thereof. It seems to us that the court, in giving this instruction and referring to a show-ing from the evidence of a condition wherein it was impossible to make such a turn, or where with ordinary care and prudence plaintiff would not be required to turn to the right, injected into the trial an issue upon which there was no claim or evidence; and that the action of the court in so injecting such issue into the action is, in our opinion, erroneous and comes squarely with-in the rule laid down by this court in the case of Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N. W. 428. In that case the instructions submitted the question of legal excuse, and, likewise, in that case no evidence was offered which tended to establish such legal excuse as therein defined, and therein this

court definitely laid down the rule that the submission of the question of legal excuse where there is no support therefor in the evidence constitutes reversible error. As to like effect see, also, Enfield v. Butler, 221 Iowa 615, 264 N. W. 546; Lukin v. Marvel, 219 Iowa 773, 259 N. W. 782; Jarvis v. Stone, 216 Iowa 27, 247 N. W. 393. Following the above-cited cases, we are forced to the conclusion that the court erred in giving that instruction.

Instruction XVIII is as follows:

"You are instructed that it is the law of this state that any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead.

" 'Assured clear distance ahead' means the distance ahead in which the driver of the car can see that he has a clear and unobstructed path in which to travel.

"A failure to observe this law on the part of the driver of a car would be negligence unless he has shown a legal excuse for failing to observe the requirements of this law. By 'legal excuse' is meant:

"1st. Anything that would make it impossible to comply with the law; 2nd, that the driver of the car is confronted by an emergency not of his own making and by reason thereof he fails to obey the law.

"You are further told that this law applies equally to both the plaintiff and the defendant. It applies to the defendant in determining whether or not he was negligent in this respect, and it applies to the plaintiff in determining whether or not he was guilty of contributory negligence in this respect."

From a reading of this instruction, it will be observed that therein set out is the statutory speed standard of section 5029, followed by instructions that a failure to comply with the law on the part of the driver of a car would be negligence, unless he has shown a legal excuse for failing to observe it. The instruction then defines "legal excuse" as, first, anything that would make it impossible to comply with the law; and, second,

that the driver of the car is confronted by an emergency not of his own making and by reason thereof he fails to obey the law.

We are unable to understand why this instruction was given to the jury in the instant case. Throughout the entire trial it was the steadfast claim of both plaintiff and defendant that neither violated the statutory requirement as to speed. Neither of said parties in their pleadings made any allegation attempting to excuse any claimed violation of this statute, by pleading anything that would make it impossible to comply with the same, or by any pleading to the effect that either of said parties was confronted by an emergency not of his own making, such as to cause him to fail to observe said law. Likewise, the evidence introduced on the part of both plaintiff and defendant was to the effect that neither had violated the particular statute involved, and no evidence of any sort was introduced, even claiming inferentially that any condition existed that made it impossible for either plaintiff or defendant to comply with the law, or to the effect that either plaintiff or defendant was confronted with an emergency not of his own making, and by reason of which he failed to comply with the provisions of the statute. It is our conclusion that this instruction is vulnerable to the same objection that was interposed to instruction XVI, and that what has been stated in reference to the error in that instruction is likewise applicable to said instruction XVIII.

■■■ In one of the specifications of negligence, it was claimed by the plaintiff that defendant was negligent in driving upon said highway a motor truck more than six feet in width without electric lamps or reflectors so placed as to outline the limits of the body. In instruction XIII, wherein the court instructed the jury upon said specification of negligence, the court set out in its entirety the provisions of section 5044-d1 of the Code, containing therein the provisions of said section requiring the lamps or reflectors carried on the rear of the body to cast or reflect a red ray of light; and in this instruction the court further told the jury that the failure on the part of defendant to have the truck so equipped with reflectors as therein provided constituted negligence.

Objection is made to this instruction on account of the incorporation therein of the provisions relative to defendant's truck being equipped with red lights or reflectors at the rear thereof,

claiming that there was no evidence whatever covering that point, and that it injected an issue of negligence into the record which in no manner could have been the proximate cause of the injury complained of. Naturally, no evidence was introduced in any way making any reference to red lights or reflectors on the rear of defendant's truck, on account of the fact that the car and truck were traveling toward each other, and the collision occurred before it would have been physically possible for anyone in plaintiff's car to have observed the rear of defendant's truck. It is our opinion that the portion of said instruction relating to lights or reflectors on the rear of defendant's truck should have been omitted, but it is very doubtful if the same is so prejudicial as to require a reversal. However, in view of the fact that a new trial will be necessary in this action, it is well to call attention to this irrelevant portion of said instruction, in order that same may then be omitted.

**■■■** The court gave instruction XXI to the jury as to the measure of damages, and made the following statement:

"In determining such amount, if you find for the plaintiff, you will take into consideration the proof showing the character and extent of the injuries of which the plaintiff complains; the pain and suffering, both mental and physical, if any, suffered by the plaintiff; the evidence bearing upon the question as to whether he has recovered from said injuries and whether he will continue to suffer therefrom in the future; and if you find that he has not recovered from said injuries and that he is reasonably certain to continue in the future to suffer therefrom, then you should take into consideration the evidence as to the probable expectancy of the life of the plaintiff, and allow him such a sum as will fairly compensate him for future pain and suffering, if any, insofar only as you find from the evidence such damages as are reasonably certain to result from his said injuries, if at all."

Objection is made to that portion of the instruction directing the jury to allow plaintiff such sum as will fairly compensate him for future pain and suffering. In connection therewith, the plaintiff in his petition makes no claim whatever for future pain and suffering, but in his petition does allege that the injury to his arm is permanent, that unsightly scars were left upon his arm that will remain permanently, that his arm is shrunken in

size, that he is permanently disabled from performing the business for which he was fitted, and that as a result of the accident and medical treatment he was given he suffered severe and intense physical pain, and that the accident and his present condition have caused him great worry and mental anguish. Likewise, in the petition plaintiff asks for damages in a general allegation, and does not therein make specific request for specific amounts covering the different items of his damages. The physician testified that the plaintiff had practically no use of his elbow joint at the time of the trial, that he would have no use of it in the future, that the arm was very much weakened, that his arm was not as large as a normal arm should be, and that there was no chance for improvement. The plaintiff himself testified during the trial that he had pain in his arm at that time, that it ached, and that he had this pain most of the time. While it is true that there is no specific allegation in plaintiff's petition that he will suffer pain in the future, yet there are allegations contained in said petition relative to his injury as above set out, which create a situation similar to the one in the case of Westercamp v. Brooks, 115 Iowa 159, 161, 88 N. W. 372, 373, wherein the court instructed the jury that it "should allow plaintiff 'such reasonable sum as you shall award him on account of physical pain and mental anguish he has suffered, and will suffer in the future, by reason of his injuries, if any,' " and to which the objection was made that there was no claim in the petition for future pain and suffering, and no evidence to support same. However, the court in that case held, that in view of the allegations that plaintiff received serious and permanent injuries, that he would in the future be incapacitated from work and earning wages, and that he had incurred doctor bills, that he would in the future incur doctor bills on account of said injuries, and that in view of the fact that there was a general allegation for damages, the court did not err in submitting the question of future pain and suffering.

As is stated in the case of Palmer v. Waterloo, 138 Iowa 296, 300, 115 N. W. 1017, 1019:

"The rule may be laid down that, when the allegations are in effect that the injury is permanent and future pain is reasonably certain, a general allegation of damages will be a sufficient basis for allowing compensation for these elements, as they are

the natural result of the act complained of, and therefore need not be specially pleaded. But, if the allegations of the injury or the condition described as the consequence of the act complained of are not such as to indicate that it is likely to cause future pain and suffering, and any such inference is rebutted or negatived by allegations of the several elements to be considered in fixing compensation, the elements of future pain and suffering should not be taken into consideration.''

In this case it is fair to assume that the nature of the injury sustained by plaintiff is such that the jury would be warranted in determining that future pain is reasonably certain, and it is therefore the opinion of the court that it was proper to submit the question of future pain, even though not specifically pleaded.

For the errors pointed out herein, this case is hereby reversed and remanded.—Reversed and remanded.

STIGER, C. J., and HAMILTON, KINTZINGER, DONEGAN, and SAGER, JJ., concur.