LINLEY S. GRISELL, Plaintiff, Appellee, v. KARL W. JOHNSON et al., Defendants, Appellants.

No. 45346.

November 12, 1940.

Bradshaw, Fowler, Proctor & Fairgrave, for defendants, appellants.

Stipp, Perry, Bannister & Starzinger, for plaintiff, appellee.

HAMILTON, J.—The accident out of which this action arose occurred at the intersection of University Avenue and 20th Street, known as Harding Road, in Des Moines, Iowa. It was in the dusk of the evening of a damp and misty day in June 1939. Plaintiff was conducting a pharmacy at 18th Street and University Avenue. He was 66 years old but was in the habit of riding his bicycle when delivering merchandise and, when this accident occurred, he was proceeding westward from his place of business with some merchandise for a customer residing on West 21st Street. Defendant Mrs. Karl W. Johnson, driving her husband's car, was going east on University Avenue intending to make a left-hand turn north at 20th Street. This intersection is equipped with a stop-and-go signaling device. As defendant was attempting to make the left turn, she struck the plaintiff's bicycle broadside, throwing him to the pavement and causing the injuries of which he complains.

The particular grounds of negligence charged and submitted to the jury, briefly stated, are:

(1) Turning to left and across highway at a time when this could not be done in safety.

(2) Failure to give appropriate signal.

(3) Failure to keep proper lookout.

(4) Failure to slow down or deflect course after seeing plaintiff.

(5) Failure to pass around center of intersection before turning.

Here are the facts, as related by the respective parties involved:

Plaintiff testified:

"As I proceeded west toward this intersection, the lights changed to green when I was probably fifty or sixty feet from this corner. The green lights were on the crossing as I got closer to the intersection. There was a string of cars coming across from the south side. I would judge probably six to

ten cars crossing Harding Road, when I started across. I looked at those cars carefully to see that none were turning north and none made any signals turning north. I was just crossing the second rail when I saw the car coming from the southwest. It was probably eight to ten feet away and I didn't have time to do anything. It struck me broadside and threw me, it seemed like, about ten feet northeast. My flashlight was lit for about a block and a fourth before the point of accident. I would say that I could see ahead of my bicycle with this light a distance of about thirty to forty feet. The light would be discernible from the other direction on that particular night at least three hundred feet. As I proceeded west, I angled to the north before I came to the intersection and rode along close to the side of the curb, then I went straight across from there. The first I observed the Johnson car was after I had actually entered the intersection. Mrs. Johnson's car must have been about the seventh car. She could not have been within the first six cars because they all went to the east.''

Defendant Mrs. Karl W. Johnson, driver of the car, testified:

''When I arrived at Harding Road, the stop light for east bound traffic was on. There was one car ahead of me. I had to stop and wait. When the light said 'Go', I had rolled down my window preparatory to giving the signal for a left-hand turn and I gave my signal and looked ahead to see whether it was clear and I went ahead. I made my turn and had almost straightened out again to the north and all of a sudden there was Mr. Grisell directly in front of my car. My car struck him. The first I saw of him was when he was right on top of my car. I did not observe Mr. Grisell's bicycle coming west. I did not observe any light. There were no cars coming west. I looked to see if there was any traffic coming. I made my turn in second gear going eight or ten miles per hour. After I struck Mr. Grisell, I stopped my car, set my brakes, turned off the ignition and went back to him. The lights were on my car. It was between dark and light, kind of half dusk. There was a heavy mist and the windshield was quite wet. After the accident, Mr. Grisell was lying on the pavement to the east

and rear of my car. I did not see Mr. Grisell crossing the street until I had hit him. My headlights had been headed off to an angle. I had almost made a right-angle turn. As my lights turned, they must have covered the path Mr. Grisell had to traverse with his bicycle. I did not see him at any time with my headlights. He must have been there. I did not necessarily need the lights on my car to see objects in the street. Mr. Grisell, after the accident, was lying between the rails of the east streetcar tracks that go out from town."

The first six specifications of error relate to the instructions. We have given careful consideration to each of these and find no merit in any of them. They correctly state the law applicable and, in the absence of any request, with as great particularity as was necessary. We will not attempt to set out these instructions and discuss each of them separately.

One of the propositions most strenuously urged relates to the instruction on signaling intention of making a left turn. In this connection, it should be noted that the defendant does not claim that she gave any signal until she started her car after having stopped for the stop sign. Then she used her hand indicating a left turn. The court, therefore, in one of his instructions, told the jury how hand signaling should be given, for instance:

"Left-hand turn—hand and arm extending horizontally."

In doing so, he was simply following the statute. (Section 5025.07, C., '39.) [Section 5025.08, C., '39.] In another instruction, the court instructed that such a signal of intention to turn left shall be given continuously not less than the last 100 feet traveled by the vehicle before turning. This too was simply stating the provisions of our statute. (Section 5025.05, C., '39.) Appellants contend these instructions are misleading and confusing because, counsel says, Mrs. Johnson would be required to give two different signals at one and the same time. Since the stop sign required her to stop, she would have to extend her hand down and, at the same time, keep her hand extended horizontally for at least 100 feet and keep her hand extended 40 to 60 seconds while waiting for the light to change, and, appellants contend, this confused the jury. Now we believe the average

jury is not so easily confused. Under either theory of this case, as Mrs. Johnson drove down University Avenue where she had been proceeding east for several blocks with the intention of making a left turn at Harding Road, it was her duty, as the trial court instructed, to give an appropriate signal for not less than the last 100 feet traversed before turning. This means 100 feet from the point where she started to change her course in turning left. This she did not do and counsel does not claim that she did. The fact that she was momentarily required to stop because of the stop sign within the hundred feet would not interrupt the application of the 100-foot rule. As to her being at the same time required to signal she was going to stop, we simply say that question is not involved in this lawsuit; furthermore, the matter of stopping at this intersection was regulated by the stop sign. All drivers approaching this intersection, under the law, would necessarily be governed by the red, yellow and green lights. Counsel for appellants says:

"Suppose a car was parked within twenty or thirty feet from an intersection at which, after starting, the driver intended to make a left turn. How then could such a driver be expected to extend his hand for the last one hundred feet?"

This is a real puzzler. It just couldn't be done, could it? Is it reasonable to assume that any intelligent juror wouldn't know, without the court instructing in detail, how to apply the statute in such a case? At any rate, we will not worry over this momentous question until we get to it. It surely is not involved in this lawsuit. Neither do we think a juror would have any great difficulty in figuring out what to do with the extended arm while traffic was momentarily at a standstill. If, under such circumstances, he should withdraw his arm momentarily and extend it again before starting, he would be held to have, at least substantially, complied with the law. There is nothing in the situation here to invoke or make applicable the doctrine of legal excuse as suggested by appellants in argument.

In another instruction, the court embodied the provisions of section 5026.02, C., '39, relating to the duties of the driver of a vehicle within an intersection intending to turn to the left yielding the right of way to any vehicle approaching from the opposite direction, etc. Appellants lodge numerous ob-

jections to this instruction contending that this law was not applicable. There is no merit in this contention.

In instruction No. 11, the court told the jury:

"You are further instructed that it is the duty of the operator of a motor vehicle to at all times use ordinary care, that is, such care as a reasonably prudent and cautious person would exercise under the circumstances, and a failure to exercise such care would be negligence."

This is a stereotyped form of instruction defining negligence and by no stretch of the imagination can it be construed as submitting general negligence. The cases of Ryan v. Trenkle, 199 Iowa 636, 200 N. W. 318; Faatz v. Sullivan, 199 Iowa 875, 200 N. W. 321; Keller v. Dodds, 224 Iowa 935, 277 N. W. 467; Holub v. Fitzgerald, 214 Iowa 857, 243 N. W. 575; and Cooley v. Killingsworth, 209 Iowa 646, 228 N. W. 880, cited and relied upon by appellants, are easily distinguishable. In all of these cases, · the court went much further than in the case at bar. Furthermore, as appellee points out, in the case of Shutes v. Weeks, 220 Iowa 616, 626, 262 N. W. 518, 524, the same trial judge gave the same instruction and similar objections were made, and, while the court in its opinion does not discuss this particular instruction, we did state that:

"We have examined the record with respect to the other questions raised by appellant, but find no prejudicial errors therein * * * ."

We still say that the giving of this instruction was not error. The operators of the respective vehicles, in exercising their judgment as to whether or not they are within their rights fixed by the statutory provisions governing their conduct, are entitled to have their actions measured by what the jury might find an ordinary, cautious and prudent person would do or would be justified in doing under like or similar circumstances. Enfield v. Butler, 221 Iowa 615, 631, 264 N. W. 546, 554. Instruction No. 11, above quoted, is a proper statement of this rule.

In instruction No. 14, dealing with the subject of the plaintiff's conduct, among other things, the court told the jury:

"In determining whether or not the plaintiff was, himself, guilty of negligence you may consider the fact that the law of this state provides that persons riding a bicycle upon the streets and highways shall be subject to the provisions applicable to drivers of motor vehicles, and the care and caution required of them, except where the provisions of the law relating to the operation of motor vehicles, by their nature, can have no application * * *."

Appellants object to this language saying that this instruction would permit the jury to speculate as to the motor vehicle laws that would have no application to persons riding a bicycle. When the entire instruction is read in connection with all other instructions, there is nothing contained therein which could possibly prejudice the appellants. If anyone were entitled to complain, it would be the appellee.

Complaint is also lodged against instruction No. 15. This is another stereotyped instruction and, when read in connection with all other instructions, is a correct statement of the law.

The last error assigned relates to the verdict, the contention being that the verdict is excessive and is the result of influence of passion or prejudice. We think the verdict is large but it is not so large as to warrant the assumption that it is the result of passion or prejudice, and, hence, we decline to interfere with the jury's verdict.

Finding no error, the judgment of the trial court must be and is affirmed.—Affirmed.

STIGER, SAGER, HALE, MILLER, BLISS, MITCHELL, and OLIVER, JJ., concur.