VESTER J. SKUTT, Appellee, v. RAY E. DILLAVOU et al., Appellants.

MILES SCHAEFFER, Appellee, v. RAY E. DILLAVOU et al., Appellants.

Nos. 46444
46443.

MARCH 7, 1944.

Wear, Boland & Nye, of Omaha, Nebraska, and Graham & Graham, of Jefferson, for appellant.

Gross & Crawford, of Omaha, Nebraska, and R. G. Howard, of Jefferson, for appellees.

Guy C. Richardson, of Jefferson, and Batschelet & Vincent, of Guthrie Center, for Ray E. Dillavou and Margaret A. Dillavou.

Wm. C. Hanson, of Jefferson, for J. E. Eiben.

SMITH, C. J.— These two cases were consolidated for the purpose of hearing on special appearance. The defendants and issues are the same in each case. The defendant Union Transfer Company, appellant, was served in each case by filing the original notice with the Iowa Commissioner of Public Safety under the provisions of Code section 5038.04. Notification thereof was personally served on said appellant in Omaha, Nebraska, pursuant to Code section 5038.07. (All citations of Code sections refer to the Iowa Code, 1939.)

Appellant appeared specially in each case and questioned the sufficiency of the service, claiming it was not a "person" within the meaning of Code section 5038.01 as specially defined in Code section 5038.02. The contention is based upon two propositions: (1) The appellant was not the "owner" of the truck in question, Code section 5038.02(1), and (2) was not "in charge of the vehicle and of the use and operation thereof", Code section 5038.02(3). No claim is made of any irregularity or insufficiency in the mechanics of the service under the statutes involved. The trial court overruled the special appearance; the transfer company alone appealed and we have the one narrow issue to decide.

The record presents no serious dispute of fact. The cases grow out of an automobile-truck collision which occurred in Greene county September 14, 1941, between an automobile of defendant Ray E. Dillavou, being driven by defendant Margaret

A. Dillavou, and a motor-transport vehicle, consisting of a tractor and trailer, driven by defendant J. E. Eiben and transporting a cargo for appellant, Union Transfer Company. In some manner unexplained in this record and unnecessary to this appeal, appellees, who were riding in a third vehicle, were injured.

The tractor was registered in the name of defendant Eiben but was under written lease from him to appellant, a Nebraska corporation with principal place of business at Omaha in that state. The written lease itself does not appear in the record but it appears defendant Eiben was paid on a mileage basis for the use of the tractor and for his services in driving it.

Appellant was engaged in the business of operating a freight line between Omaha, Nebraska, and Belle Plaine, Iowa (a division office), and points east. Eiben made the regular run from Omaha to Belle Plaine, at which point the trailer would be unhooked and taken on east by another tractor while he would hook onto another trailer going west. The transactions had to be covered by an Interstate Commerce Commission permit which was in the name of appellant. Eiben was a resident of Nebraska and had no permit of his own for transporting goods in interstate commerce. Federal Transportation Act, 49 U. S. C., section 1010. The accident occurred on one of his regular trips for appellant.

Appellant deducted social security from the pay earned by Eiben for his services, and carried the property-damage and personal-liability insurance on his tractor. It had tractors and trailers of its own and paid stated wages to the men who operated them. The particular trailer being drawn by Eiben at the time of the accident, however, belonged to one Emil Fritz.

Appellant's vice-president testifies:

"The operation of the tractor itself was in the control of Mr. Eiben who owned the tractor. We had a lease on it, which we filed with the Interstate Commerce Commission. * * * Mr. Eiben would have the same right as Mr. Fritz, in other words, we had to have his consent to send his tractor anywhere, Chicago or anywhere else and if he did not want [it] to go to Chicago we could not send it there. The tractor and trailer both in our possession are subject to the owner's consent at the time this trip was made.

Mr. Eiben was working under our direction as to where it should go and what he should do. First of all we told him where the load was going and naturally after he agreed to take the load into Chicago or wherever he was going he still would be under our direction, but still with his permission. He runs in either direction from Belle Plaine. Belle Plaine is a division point. If the trip originates in Omaha, Belle Plaine would be the end of his trip."

Again he says:

"The tractor operator purchases his own gasoline and lubricating oil, maintains his own equipment and purchases his own fuel. * * * The wages are at an agreed rate per mile and at that time of the accident it was 2¼¢ per mile."

This was in addition to the mileage paid for the use of the tractor. He testifies further that the only difference in manner of operating a leased tractor- and trailer-unit and one owned by appellant was "that we have no control over our leased operators insofar as where they purchase gas, etc., and we couldn't direct them as to what particular station they could stop at" for that purpose.

The words "Union Freightways" were painted on the tractor. Eiben says:

"Union Transfer painted the sign on my tractor. I paid for it. Union Transfer Company did not tell me to do it. The State of Iowa did."

He says, "Union Freightway is a connecting line," but appellant's vice-president testifies that appellant operates and is sometimes referred to as the "Union Freightways" and that the latter is owned and operated by appellant.

I. Appellees contend that appellant was, under this record, the "owner" of the tractor in question within the meaning and for the purposes of the statutory provisions involved. They cite cases which hold that as used in the mechanic's-lien law, the redemption laws, and the statute concerning trespass by animals upon adjoining land the owners of which do not maintain lawful partition fences, the term has meaning broader than absolute and unqualified title.

It is probable, however, that the word as used in section 5038.02 (1) is controlled by the definition in Code section 5000.01 (33), which is found in the same chapter of the Code and is expressly made applicable "for the purposes of this chapter."

In the view we take of the case we need make no pronouncement, and, in fact, make none, upon the question of ownership. The vehicle was leased to appellant and was being used and operated for its benefit and in the conduct of its business under its Interstate Commerce Commission permit, which constituted the only legal authority for such use and operation.

II. Under these circumstances the justification for the substituted service upon appellant must be sought in Code section 5038.02 (3), which reads as follows:

"3. Any person who is in charge of the vehicle and of the use and operation thereof with the express or implied consent of the owner."

Code section 5000.01 (32) defines the word "person" as "every natural person, firm, copartnership, association, or corporation."

When we apply this definition to Code section 5038.02 (3) we must conclude that the legislature contemplated that a *corporation* could be "in charge of the vehicle and of the use and operation thereof." Inasmuch as a corporation can only function through the aid and by means of individuals, it must have been intended that a foreign corporation would, in a proper case, be subject to substituted service under our statute, as a "person in charge of the vehicle and of the use and operation thereof," even though the actual physical operation was by an officer or agent or employee. Any other conclusion would limit the term "person" in section 5038.02 (3) to *exclude* corporations and other legal entities expressly *included* by the definition in section 5000.01 (32).

We are not inclined to limit the application of section 5038.02 (3) to natural persons in actual physical charge of the vehicle. If, under the record, it can be said Eiben was the authorized agent or employee of appellant in the operation of the tractor, it must follow that appellant was in charge of the

vehicle and of the use and operation thereof and was subject to substituted service under the statute. Jones v. Pebler, 371 Ill. 309, 20 N. E. 2d 592, 125 A. L. R. 451.

Appellant argues that the words "in charge of" and the words "use and operation" appearing *conjunctively* with the words "any person in charge of the vehicle" mean *physical* possession and *physical* use and operation. Michigan authorities are cited for the proposition that the word "operate," as used in a statute providing for substituted service upon nonresident motorists, means physical manipulation. Other authorities are cited for a similar construction upon the words "person in charge of" in cases involving liability for alleged negligent operation.

The ready answer, to appellant's contention is suggested in one of the cited Michigan cases:

"The words 'operation' and 'operating' may mean many things. The other motor statutes do not aid us because they employ the words as meaning acts of the owner or of the driver, according to the context." Brown v. Cleveland Tractor Co., 265 Mich. 475, 478, 479, 251 N. W. 557, 558.

In that case the court significantly adds:

"The question is not before us whether the statute would permit substituted service on a nonresident corporation conducting a bus or truck service or the like, operated under direct supervision and ordered routes."

The Michigan statute speaks only of the *"operation* by a nonresident." [Compiled Laws Michigan, section 4790.] There is no language concerning one *"in charge* of the vehicle and of its use and operation." The difference in language compels a difference in construction. If Eiben was appellant's agent, his physical possession of the vehicle was in fact appellant's possession, and certainly, in that case, appellant was in charge of its *use* and *operation.*

The use of the conjunctive "and" in our statute does not mean that the "person" in any given case must be both in physical charge of the vehicle and in charge of its use and operation. The courts do not hesitate to construe "and" as "or"

if necessary to arrive at legislative intent. Eisfeld v. Kenworth, 50 Iowa 389, 391; Seaton v. Grimm, 110 Iowa 145, 149, 81 N. W. 225, 226. The paragraph clearly means to include any person in charge of the vehicle *and* any person in charge of its use and operation; in other words, "any person in charge of the vehicle *or* of the use and operation thereof."

If only the actual physical operator of the vehicle was intended, the additional words "and of the use and operation thereof" were entirely unnecessary. The legislature could have simply said, "the operator" and allowed the statutory definition in Code section 5000.01 (39) to prevail.

We agree with the Nebraska court that the expression "use and operation" means more than the single word "operation" standing alone. Rose v. Gisi, 139 Neb. 593, 298 N. W. 333. We also think "person *in charge* of operation" is broader than the word "operator" as defined in Code section 5000.01 (39). It may include one who controls and directs the operation through an agent or employee who is the "operator."

We can find no warrant in the record for holding Eiben was an independent contractor. His position as driver of his truck was the same as would have been the position of any other driver employed by appellant for that service. He was not driving it as its owner but as agent or employee of appellant. True, he had to purchase his own gas and oil and maintain his own equipment. He was paid mileage to cover those items and the use of the tractor. He was paid separate mileage as wages. The operation was under appellant's Interstate Commerce Commission permit. Appellant carried the insurance coverage on the tractor and deducted social-security tax from Eiben's wages. See Towers v. Watson Bros. Transp. Co., 229 Iowa 387, 294 N. W. 594.

All the considerations mentioned compel us to hold that appellant was subject to substituted service of notice under our statute. The decision of the district court is—Affirmed.

All JUSTICES concur.