**KEMP v. CRESTON TRANSFER CO. et al.**

Civil Action No. 314.

District Court, N. D. Iowa, E. D.

March 12, 1947.

Kenline, Roedell, Hoffman & Reynolds and E. J. Kean, all of Dubuque, Iowa, for plaintiff.

Comfort, Comfort & Irish, of Des Moines, Iowa, and O'Connor, Thomas & O'Connor, of Dubuque, Iowa, for defendant Creston Transfer Co.

Lane & Waterman, of Davenport, Iowa, for defendant Delbert Lambert.

GRAVEN, District Judge.

On motions for new trial in motor vehicle collision case. On April 20, 1945, on Highway No. 61, south and outside of the city limits of Dubuque, Iowa, a tractor-trailer unit of the freight-carrying type driven by the defendant Delbert Lambert collided with a passenger car driven by Lester Justman. Louis Kemp who was a passenger in the car driven by Lester Justman died as a result of injuries received in the collision. The defendant Creston Transfer Company was a lessee of the

tractor-trailer unit. The plaintiff as administratrix of the estate of Louis Kemp brought this action in state court against Delbert Lambert and Creston Transfer Company to recover for his death. The case was removed to this court because of diversity of citizenship. A jury trial was had. The jury returned a verdict in the sum of $15,000 and judgment was entered against both defendants for that amount. The defendants have moved for a new trial on several grounds.

Highway No. 61 was a paved highway. The pavement was 18 feet in width, with the center marked by a black line. The collision took place around 6:00 o'clock P. M. It was still daylight at the time. The pavement at the time in question was damp from a light rain or drizzle. Lester Justman and Louis Kemp were painters residing in Dubuque, Iowa. They had been painting during the day on a premises further down the highway. They were on their way back to Dubuque at the time of the collision. The defendant Delbert Lambert had left Chicago in the morning of that day with a load of freight. He had discharged part of his load at Rockford, Illinois, and Dubuque, Iowa, and at the time in question had about a half a load of freight to be delivered at Davenport, Iowa, and Moline, Illinois. Delbert Lambert was on his way to Davenport, Iowa, at the time of the collision. The collision occurred between one-half and one-fourth miles outside of the city of Dubuque, Iowa. Highway No. 61 as it leaves Dubuque runs in a general north and south direction. At the particular point the highway ran down grade from what the defendant Delbert Lambert described as the "top of the cliff" and "top of the cliff or hill." The highway descended from the top of the cliff or hill by winding for a distance of a mile or two. In the area of the collision there were a number of curves. Just prior to the collision the defendant Delbert Lambert was descending from the top of the cliff or hill on the upper part of an S curve and Lester Justman was going up towards the top of the cliff or hill on the lower part of a S curve. The collision took place near the upper end of the lower part of the S curve. On the west side of the pavement near the point of collision was a shoulder about five feet in width; then a guard rail; and then a drop-off of 30 to 40 feet into what was described as a ravine. On the west side of the pavement near the point of collision there was a tree covered side of the cliff or hill coming up in the near proximity to the pavement. A deputy sheriff took photographs at the scene of the collision, which were in evidence. Both Delbert Lambert and Lester Justman survived the collision and testified as witnesses. The only other eyewitnesses to the collision were Mr. & Mrs. Clarance Manders who lived nearby and whose testimony corroborated that of Lester Justman. It was the testimony of Delbert Lambert that he was at all times on the right hand or west side of the center line of the pavement; that he was driving around thirty miles per hour and that he had the tractor-trailer unit under control; that the collision was occasioned by Lester Justman driving up the cliff or hill over on the west side of the center line of the pavement. Lester Justman testified that he first saw the tractor-trailer unit when it was traveling down hill about half way around the upper curve; that at the time it was over on the east side of the road and traveling at a speed of forty-five miles an hour and continued to travel on the east side of the road; that as Delbert Lambert approached the Justman car he made a quick sudden turn to the right; that the collision took place at or about the time that Delbert Lambert made a quick turn to the right. It appears that the Justman car collided with the east side of the trailer and slightly to the rear of the center of it.

█ Jurisdiction in this case being founded upon diversity of citizenship the law to be applied is the law of Iowa. Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed 1188, 114 A.L.R. 1487.

█ It is well settled in Iowa that a passenger in a car neither owning, operating nor having control over the car in which he is riding does not have imputed to him the negligence of the driver of the car. In re Goretska's Estate, 1944, 234 Iowa 1080, 13 N.W.2d 432; White v. McVicker, 1933, 216 Iowa 90, 246 N.W. 385;

Kuhn v. Kjose, 1933, 216 Iowa 36, 248 N.W. 230. While in collision cases the negligence of the driver of a car is not imputable to the passengers, yet the negligence of the driver becomes of importance on the question of sole proximate cause where a passenger sues the driver or owner of the other car. Greiner v. Hicks, 1941, 231 Iowa 141, 300 N.W. 727. In the present case the defendants by their answers pleaded that the negligence of Lester Justman was the sole proximate cause of the collision. Where a defendant pleads that the negligence of a third party is the sole proximate cause of an automobile mishap, the court may properly assign the burden of proving such defense to that defendant. Usher v. Stafford, 1939, 227 Iowa 443, 288 N.W. 432, 434; Johnson v. McVicker, 1933, 216 Iowa 654, 247 N.W. 488; Frideres v. Lowden, 1945, 235 Iowa 640, 17 N.W.2d 396. However, in the present case the Court placed the burden of proof as to proximate cause on the plaintiff. In the present case the Court first instructed on the duties of both Delbert Lambert and Lester Justman at the time and place in question. Then the Court in Instruction No. 10, instructed as follows:

"You are instructed that separate independent acts of negligence by different participants may combine to produce a single injury even though one of them alone by his act or acts of negligence might not have caused the injury. This is what is known in law as concurrent negligence; that is, the negligence of either concurs with the other so as to cause the injury. In such cases, each of the participants is regarded in law as having been the proximate cause of the injury even though neither alone was the sole cause of the injury.

"In the present case, if the negligence, if any, of Delbert Lambert, concurred with the negligence, if any, of Lester Justman so as to produce the injury, the negligence of Delbert Lambert, if any, would be regarded in law as the proximate cause of the collision even though it was not the sole cause of the collision. However, if you find that the sole cause of bringing about or producing the collision and without which the collision would not have occur-

red was the negligence of Lester Justman, then such negligence on the part of Lester Justman would constitute the sole proximate cause of the collision and your verdict should be for the defendants."

The defendants excepted to this instruction as follows:

"The defendants except to Instruction No. 10 for the reason that same should be enlarged to instruct the jury that the negligence, if any, of Delbert Lambert, could only be a proximate cause of the collision, if the collision would not have happened without the negligence of the said Delbert Lambert and the mere fact that said negligent act of Delbert Lambert and Lester Justman might have concurred to produce the injury is not sufficient to charge Delbert Lambert's negligence with being the proximate cause of said collision which resulted."

■■ In the case of Faatz v. Sullivan, 1924, 199 Iowa 875, 881, 200 N.W. 321, 324, the court states: "But the court did not err in refusing to give the requested instruction in the form asked, because the second sentence thereof did not correctly state the law applicable to the case." It is the well settled law in Iowa that if the negligence of the operator of a motor vehicle concurs with the negligence of a third person in causing an automobile mishap, that such concurring negligence constitutes a proximate cause of the mishap even though it is not the sole cause. Dennis v. Merrill, 1934, 218 Iowa 1259, 257 N.W. 322; Kuhn v. Kjose, 1933, 216 Iowa 36, 248 N.W. 230; Johnson v. McVicker, 1933, 216 Iowa 654, 247 N.W. 488. The instruction requested by the defendants would have absolved the defendants from liability even though the negligence of Delbert Lambert concurred with the negligence of Lester Justman, which would be contrary to the rule laid down by the Iowa Supreme Court.

■ In Instruction No. 9 in the present case just preceding the instruction referred to, the Court instructed the jury (italics supplied): "By 'proximate cause' as used in these instructions, is meant the direct and natural cause, unbroken by any other cause, and *without which the collision could not have occurred,* or the damage

caused." In Instruction No. 11 the jury was instructed that in order for the plaintiff to recover it was necessary for her to establish by the greater weight or preponderance of the evidence that the negligence of Delbert Lambert "was the proximate cause of the collision with the motor vehicle driven by Lester Justman." In Instruction No. 21 the jury were instructed: "You are to consider all of the instructions together and apply them as a whole to the evidence in the case." It is believed that apart from the matter of the requested instruction that Instructions 9 and 10 and 11 taken together stated the Iowa rule in regard to concurrent negligence and proximate cause. In Burwell v. Siddens, Iowa 1947, 25 N.W.2d 864, 865, similar instructions were held to correctly state the law.

In the present case the plaintiff in her complaint specified five grounds of negligence on the part of the defendant Delbert Lambert. Specifications (d) and (e) of plaintiff's specifications of negligence were as follows:

(d) In operating said unit at a dangerous and excessive rate of speed under the conditions then existing;

(e) In failing to operate such unit at such a rate of speed as to be able to bring it to a stop within the assured clear distance ahead.

 There was in effect at the time Section 321.286, Code of Iowa 1946, which provided as follows:

"321.286 Truck speed limits. It shall be unlawful for the driver of a freight-carrying vehicle, with a gross weight of over five thousand pounds, to drive the same at a speed exceeding the following:

"1. Forty miles per hour for any freight-carrying vehicle which is equipped with pneumatic tires.

"2. Twenty miles per hour for any freight-carrying vehicle equipped with solid rubber tires, if the weight of the vehicle and load is less than six tons, and twelve miles per hour for any freight-carrying vehicle equipped with solid rubber tires, if the weight of the vehicle and load is more than six tons."

While the plaintiff in her complaint did specify the particular statutes she claimed the defendant Delbert Lambert had violated, yet it is obvious from the language used in the specifications that she was referring to Section 321.285, Code of Iowa 1946, the pertinent portions of which provide as follows:

"Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law."

The portion of statute just set forth specifies two duties, (1) to drive at a prudent and reasonable rate of speed under the existing conditions and (2) ability to stop within the assured clear distance ahead. Swan v. Dailey-Luce Auto Co., 1936, 221 Iowa 842, 849, 265 N.W. 143; Wells v. Wildin, 1938, 224 Iowa 913, 277 N.W. 308, 313, 115 A.L.R. 169. The duty of being able to stop within the assured clear distance ahead is not ordinarily applicable to cars going in opposite directions. Gregory v. Suhr, 1938, 224 Iowa 954, 277 N.W. 721. In the present case the Court did not submit the matter of the duty of the driver of either car being able to stop within the assured clear distance ahead but instructed on the duty of both Delbert Lambert and Lester Justman under the first portion of the statute referred to by instructing the jury in Instruction No. 8: "You are instructed that it was the duty of both Lester Justman and Delbert Lambert at the time and place in question, (1) to drive at a careful and prudent speed, not greater than nor less than was reasonable and proper having due regard to the traffic, surface and width of the highway and all other conditions then existing as shown by the evidence."

The Court did not read any of the motor vehicle statutes involved in the present case to the jury, but instructed in the terms of the duty each driver was under at the time and place involved in the collision.

The plaintiff in her complaint specified that the defendant Delbert Lambert was negligent "in failing to have the said unit driven by him under control." The jury were instructed in Instruction No. 7: "In connection with the term 'control' as used in these instructions, you are instructed that a driver may be said to have his automobile under control when he has the ability to guide and direct its course of movement, fix its speed, and can if the occasion demands, bring it to a stop within a reasonable degree of celerity." That definition of control is the one approved by the Iowa Supreme Court. Duncan v. Rhomberg, 1931, 212 Iowa 389, 236 N.W. 638. In Instruction No. 8 the jury were instructed that it was the duty of both Lester Justman and Delbert Lambert at the time and place in question: "To have the motor vehicles driven by them under control."

In addition to specifications of negligence as to the matter of speed and control, the plaintiff specified that the defendant Delbert Lambert was negligent in being over the center line of the highway. The defendants by timely and proper motions challenged the submission to the jury of the specifications of negligence as to control and speed. It is their strongly urged contention that there was no evidence justifying the submission of those specifications of negligence to the jury. It is their claim that the only specification of negligence involved is the matter of being over the center line of the pavement. It is the contention of the plaintiff that from the evidence the jury could find the defendant Delbert Lambert was driving a large tractor-trailer unit on a damp pavement at the rate of 45 miles an hour at the start of a down hill grade one to two miles in length and which curved and wound back and forth, and that his handling of the truck was such as to indicate both excessive speed and lack of control. It is the view of the Court that excessive speed and lack of control were proper items to be considered by the jury. See Pazen v. Des Moines Transp. Co., 1937, 223 Iowa 23, 272 N.W. 126, and Coon v. Rieke, 1942, 232 Iowa 859, 6 N.W.2d 309. In the present case there was evidence of a sudden swerving just prior to the collision. However, the Iowa Supreme Court has held that a car is no less out of control when it is going on a straight line at a rapid rate of speed than when swerving. Mescher v. Brogan, 1937, 223 Iowa 573, 272 N.W. 645. The defendants on this point rely upon the case of Johnston v. Calvin, 1942, 232 Iowa 531, 5 N.W.2d 840. That case involved a collision between two motor vehicles going in opposite directions. The principal complaint of the appellant in that case was that the court should have submitted the issue of failure to stop within the assured clear distance ahead. The Iowa Supreme Court held in accordance with its previous holdings that the failure to stop within the assured clear distance ahead is not ordinarily involved in cases of motor vehicles going in opposite directions. For the same reason this Court in the present case withdrew the specification of failure to stop within the assured clear distance ahead. The defendants also rely upon the opinion in Davidson v. Vast, Iowa 1942, 6 N.W.2d 840, which held that specifications of speed and control should not have been submitted. However, the Iowa Supreme Court granted a rehearing in that case and in the opinion on rehearing, 233 Iowa 534, 10 N.W.2d 12, changed their holding and held that the issues of speed and control were properly submitted to the jury in that case.

The Court in Instruction No. 4 instructed the jury as follows:

"You are instructed that the law requires from every one who is riding as a passenger in a car at all times and at all places and under all situations to exercise for such person's own safety the care which an ordinary prudent person would exercise under the same or similar circumstances.

"In this case, if the decedent, Louis Kemp, did anything that an ordinary prudent person would not have done, or if he omitted to do anything that an ordinary prudent person would have done under the same or similar circumstances for his own safety, and such failure contributed in any way or in any degree directly to the injuries complained of, the plaintiff cannot recover in this action."

The defendant's complaint of this instruction is that the Court should have in-

structed the jury if the negligence of Louis Kemp contributed either "directly or indirectly" to the injuries complained of that the plaintiff could not recover. The instruction in question is one which the Iowa Supreme Court formulated as a model. Hoegh v. See, 1933, 215 Iowa 733, 246 N.W. 787. In that case the Iowa Supreme Court (215 Iowa at page 738, 246 N.W. at page 789) significantly states: "To avoid confusion or uncertainty it will be well for trial courts to carefully follow this model in the future."

The plaintiff's specifications of negligence (a) and (b) were as follows:

(a) In operating said unit to the left of the center of said highway when meeting the Justman car.

(b) In failing to yield one-half of the traveled way to the Justman car.

Since failure to yield and driving on the left side of the center line both involved the same basic idea, the Court treated these two specifications as one. Instruction No. 8 in the present case dealt with the duties of both Lester Justman and Delbert Lambert and in its entirety read as follows:

"You are instructed that it was the duty of both Lester Justman and Delbert Lambert, at the time and place in question (1) to drive at a careful and prudent speed, not greater than nor less than was reasonable and proper having due regard to the traffic, surface, and width of the highway and all other conditions then existing as shown by the evidence; (2) to have the motor vehicles driven by them under control; and (3) to yield, upon meeting, one-half of the traveled way of the highway by turning to the right. The failure of either driver to observe any one or more of the duties stated would constitute negligence on the part of the one so failing."

The defendants excepted to the instruction on the ground that the jury should have been instructed that the failure of either Lester Justman and Delbert Lambert to yield one-half of the traveled way would not constitute negligence but only prima facie evidence of negligence.

There was in effect at the time Section 321.298 Code of Iowa 1946, which provided as follows: "Persons on horseback, or in vehicles, including motor vehicles, meeting each other on the public highway, shall give one-half of the traveled way thereof by turning to the right." There was also in effect Section 321.297 Code of Iowa 1946, which provided: "The operator of a motor vehicle, in cities and towns, shall at all times travel on the right-hand side of the center of the street." Those sections appeared as Sections 5020 and 5019 in the Iowa Codes of 1924, 1927, 1931 and 1935 and as Sections 5024.02 and 5024.01 in the Iowa Code of 1939.

It was the sworn testimony of Delbert Lambert that the tractor-trailer unit was at all times on the west side of the center line of the highway until it went over to the east side following the collision. It was also the sworn testimony of Lester Justman that he at all times was driving on the east side of the center line of the highway.

The Iowa Supreme Court has stated that trial courts should not instruct a jury on abstract legal principles for to do so tends to obscure the question of fact to be determined by the jury and mislead them. Christensen v. Boucher, Iowa 1946, 24 N.W.2d 782. The Eighth Circuit Court of Appeals has stated that trial courts should not give instructions upon a hypothetical state of facts for which neither party contends, as it tends to divert the attention of the jury from the issue really in controversy. Kellogg v. Clyne, 8 Cir., 1893, 54 F. 696. The Iowa Supreme Court has frequently stated that instructions are not to be legal treatises for the use of the legal profession but must be such that they should enlighten and not confuse jurors unskilled in the law and unversed in legal phraseology. Elliott v. Capital City State Bank, 1910, 149 Iowa 309, 319, 320, 128 N.W. 369, 372; State v. Crutcher, 1941, 231 Iowa 418, 1 N.W.2d 195. In the case of Christensen v. Boucher, Iowa 1946, 24 N.W.2d 782, 785, the Iowa Supreme Court quotes from an opinion of the late Justice Weaver in an earlier case (Ohlson v. Sac County Farmers' Mut. Fire Ins. Ass'n, 191 Iowa 479, 182 N.W. 879) as follows: " 'Counsel on either side have gone deeply into discussion of the law with respect to the force and effect of presumptions in the trial of an issue of fact. We deem it un-

necessary in this case to attempt any final answer to this more or less vexed question upon which some modern law-writers and courts have expended (or wasted) a vast amount of learning, without shedding upon it any appreciable degree of light'."

For some years prior to 1939 there were a large number of statutory provisions relating to the operation of motor vehicles. There was much doubt as to the evidentiary status of the violations of the different statutes. In the case of Kisling v. Thierman, 1932, 214 Iowa 911, 243 N.W. 552, the Iowa Supreme Court held that all violations of statutes relating to the operation of motor vehicles except the violation of the "failure to [yield] statute" were to be considered as negligence. It held that because of long continued prior holdings that failure to yield should be considered prima facie evidence of negligence. The case of Kisling v. Thierman, supra, was followed shortly by the case of Lang v. Siddall, 1934, 218 Iowa 263, 254 N.W. 783. In that case the trial court had instructed that the failure of the defendant to yield would constitute negligence. In that case the defendant claimed his motor vehicle was on the right hand side of the road and made no attempt to explain the collision. The Iowa Supreme Court held the instruction was erroneous, stating (page 786 of 254 N.W.): "There is an essential difference between 'negligence' and 'prima facie evidence of negligence.' Prima facie evidence of negligence does not become negligence because it is unexplained or because the negligence of which it is evidence is not justified; it is still only prima facie evidence of negligence, and it is not negligence. The fact that appellant claimed to have been on the north or right half of the road would not deprive him of the right to have the jury properly instructed as to the law of the road, even though, as a matter of fact, he was on the south or left half of the road."

The scope and extent of the decision in Lang v. Siddall, 1934, 218 Iowa 263, 254 N.W. 783, was and has been the subject of uncertainty. The Iowa Supreme Court holds that the words "prima facie evidence of negligence" and "presumptive evidence of negligence" are synonymous. Bachelder v. Woodside, 1943, 233 Iowa 967, 9 N.W.2d 464, 468. The Iowa Court holds that the proper instruction to give on prima facie evidence in connection with failure to yield was that failure to yield was "presumptive evidence of negligence, * * * but that said presumption is not conclusive, and that the same might be rebutted and overcome by other facts and circumstances shown in evidence." Sergeant v. Challis, 1931, 213 Iowa 57, 238 N.W. 442, 445. In the case of Rich v. Herny, 1936, 222 Iowa 465, 269 N.W. 489, 493, where failure to yield was involved, the Court stated: "The plaintiff having established a violation of the statute by the defendant made a prima facie case, and, in the absence of any evidence showing an excuse for such violation, the plaintiff was under no obligation to proceed further."

In most motor vehicle cases, failure to yield is generally accompanied by claims of other statutory violations. Following the decision in Lang v. Siddall, supra, trial courts then had to instruct that certain violations were "negligence" or "negligence per se" while failure to yield was "prima facie evidence of negligence" or gave rise to a "permissible presumption of negligence." It was also necessary to instruct the juries on the difference between the two. It was also necessary to instruct that it was a rebuttable presumption. The approved form of instruction in connection with "prima facie" negligence was that it gave rise to a permissible presumption of negligence, which however was not conclusive but which might be rebutted or explained. Such an instruction gave rise to no difficulties as long as there was only involved the matter of the defendant going down a road obstructed by snow or otherwise or where the defendant because of sudden mechanical failure or skidding went across the center line, but where the defendant testified under oath that he was never over the center line, the instruction in regard to rebuttable presumption gave rise to difficulty. The difficulty with the rebuttable presumption instruction in such cases was that it in substance told a jury that although the defendant testified under oath that he was never over the center line, yet they should determine whether he had re-

butted or explained why he was there. The Iowa Court in the case of Deweese v. Iowa Transit Lines, 1934, 218 Iowa 1327, 256 N.W. 428, apparently limited the scope of the decision in the case of Lang v. Siddall, supra. In the Deweese case, where failure to yield was involved the defendant expressly claimed that he was on the right hand side of the road. The trial court in that case instructed that failure to yield was presumptive evidence of negligence, but that such presumption might be overcome and if it appeared from all of the evidence that he could not reasonably comply with the statute he was absolved from complying with it and the presumption of negligence arising from his failure to comply therewith had been overcome. The Iowa Supreme Court held the instruction to be reversible error stating (218 Iowa page 1334, 256 N.W. page 431): "There is nothing in the driver's evidence tending in any manner to show that 'he could not reasonably comply with said statute,' and he does not say there was. The giving of this instruction therefore invited the jury to consider evidence that was not in the case."

The case of Deweese v. Iowa Transit Lines, supra, was next followed by the case of Keller v. Dodds, 1938, 224 Iowa 935, 277 N.W. 467. In that case failure to yield was involved on the question of the contributory negligence of the plaintiff. The trial court instructed (224 Iowa page 947, 277 N.W. page 475) that the failure of a party to yield would be prima facie evidence of negligence, but that it was not conclusive but that it might be overcome "by showing that under the facts and circumstances existing at the time of said meeting, it was impossible to make such turn, or that under the facts and circumstances existing at the time and place of such meeting, ordinary care and prudence would not require him to turn to the right in passing defendant." The Iowa Court held the instruction to be reversible error stating (224 Iowa page 949, 277 N.W. page 475): "In this connection it is to be noted that it was the steadfast claim of plaintiff throughout the entire trial that he was at all times well to the right of the center of the traveled portion of the highway, and that he did not, by any pleading or by any evidence, ever make any claim

other than that he had completely complied with the provisions of that statute, Code 1935, § 5019. * * *. It seems to us that the court, in giving this instruction * * * injected into the trial an issue upon which there was no claim or evidence; and that the action of the court in so injecting such issue into the action, is in our opinion, erroneous and comes squarely within the rule laid down by this court in the case of Deweese v. Iowa Transit Lines, 218 Iowa 1327, 256 N.W. 428." In the recent case of Thordson v. McKeighan, 1944, 235 Iowa 409, 16 N.W.2d 607, 611, the trial court instructed the jury that failure to yield on the part of the defendant would be prima facie evidence of negligence and if not excused would be negligence. Both parties claimed that they were on their right side of the road. The Iowa Court held that the instruction was erroneous stating (page 611 of 16 N.W.2d): "There was no evidence presented relative to legal excuse and to so instruct [the jury] as the court did was error. Keller v. Dodds, 224 Iowa 935, 947, 950, 277 N.W. 467 and cases cited."

Under the fairly early case of Lang v. Siddall, supra, unless the trial court instructed that failure to yield gave rise to a permissible rebuttable presumption of negligence it would constitute reversible error. Under the later cases of Deweese v. Iowa Transit Lines, supra, Keller v. Dodds, supra, and Thordson v. McKeighan, supra, if both drivers claimed never to have been over the center line, then if the trial court instructed that failure to yield gave rise to permissible rebuttable presumption of negligence, it would constitute reversible error in that it injected into the case something which neither party claimed.

 It is not the province of a federal court where jurisdiction is based upon diversity of citizenship to pass upon what the state law ought to be. The only duty of a federal court in such a case is to determine what the state law is. In determining what the state law is the federal court is governed by the most recent pronouncement of the state appellate court or courts. While the state of the Iowa law is not clear, yet in accordance with the most recent pronouncements of the Iowa Supreme Court it would seem that where each driver who

is involved in an automobile collision testifies under oath that he was never over the center line that it is not proper to instruct about failure to yield giving rise to a permissible rebuttable presumption of negligence.

However, because of the topographical facts in the area of the collision the matter of being over the center line of the highway being prima facie evidence of negligence could be beside the point.

In 1937 the Iowa Legislature enacted Chapter 134 of the Acts of the 47th General Assembly. That Chapter with subsequent additions now appears as Chapter 321 of the Code of Iowa 1946. With some exceptions that Chapter followed the provisions of the Uniform Act Regulating Traffic on Highways. Mowrey v. Schulz, 1941, 230 Iowa 102, 296 N.W. 822. That Act was one approved and recommended by the National Conference of Commissioners on Uniform State Laws. With some modifications and exceptions that Act was adopted by a number of states. Those states and where it appears in its present form are as follows:

highway. The new statute appears as Section 321.364 of Code of Iowa 1946 and reads as follows:

"The driver of a motor vehicle traveling through defiles or on approaching the crest of a hill or grade shall have such motor vehicle under control and on the right-hand side of the roadway, and, upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway, shall give audible warning with the horn of such motor vehicle."

That particular statute came from what was Section 56 of the Uniform Act, which reads as follows:

"§ 56. The driver of a motor vehicle traversing defiles, canyons or mountain highways shall hold such motor vehicle under control and as near the right-hand side of the highway as reasonably possible, and upon approaching any curve where the view is obstructed within a distance of two hundred feet along the highway shall give audible warning with a horn or other warning device."

Section 321.364 as enacted by the Iowa Legislature varies from Section 56 of the

| | |
|---|---|
| Arkansas | Pope's Dig. Secs. 6659–6824. |
| Colorado | '35 CSA c. 16, Secs. 76, 77, 158–299. |
| Delaware | Rev.Code 1935, Secs. 5619–5687. |
| Idaho | Code 1932, Secs. 48-501 to 48-567. |
| Illinois | Smith-Hurd Ann.St. Ch. 95½, Secs. 98–239. |
| Indiana | Burns' Ann.Stats., Secs. 47-1801 to 47-2316. |
| Iowa | Code 1946, Secs. 321.1–321.511. |
| Kansas | Gen.St.Supp. 1939, Secs. 8–501 to 8–5,134. |
| Michigan | Comp. Laws 1929, Secs. 4693–4754. |
| Minnesota | M.S.A. Secs. 169.01–169.97. |
| Mississippi | Code 1942, Secs. 8126–8285. |
| Nebraska | R.S. 1943, Secs. 39-741 to 39-798. |
| New Mexico | 1941 Comp., Secs. 68-401 to 68-909. |
| North Carolina | G.S. Secs. 20-38 to 20-183. |
| North Dakota | R.C. 1943, 39-0101 to 39-1305. |
| Ohio | Gen.Code Secs. 6307-1 to 6307-110. |
| Oregon | O.C.L.A. Secs. 115-301 to 115-3,101. |
| South Dakota | SDC 44.0301 to 44.0362. |
| Utah | Code 1943, 57-7-7½ to 57-7-236. |

In the enactment of Chapter 134 in 1937 the Iowa Legislature enacted a new statute which introduced a number of changes in the Iowa motor vehicle law, and made an important change in regard to the matter of driving on the right hand side of the

Uniform Act. Section 321.364 uses the words "traveling through defiles" while the Uniform Act uses the words "traversing defiles." Section 321.364 omits the words "canyons or mountain highways" found in the Uniform Act. Section 321.-

364 contains the words "approaching the crest of a hill or grade" which are not in the Uniform Act. Section 321.364 uses the words "have such motor vehicle under control" while the Uniform Act uses the words "hold such motor vehicle under control". The Uniform Act provides that the driver shall "hold" the motor vehicle "as near the right-hand side of the highway as reasonably possible." Section 321.364 provides that the driver shall "have" the motor vehicle "on the right-hand side" and omits the words "as reasonably possible." Section 321.364 and the Uniform Act use the same words in regard to the matter of the sounding of a horn.

The Iowa Supreme Court has not interpreted what is meant by a "defile." The volume of annotations to the Uniform Act in question lists no decisions from any of the other states that have adopted that Act defining the word "defile." Words and Phrases (Perm. Ed.) lists no judicial definition of it. No judicial interpretation or definition of that word has been found. It would seem that where the topographical features appear, it is for the court to determine the matter of a "defile."

■■■■ The fundamental or primary purpose of the Uniform Act Regulating Traffic on Highways is to promote the safety of those using the highways. State v. Davidson, 1940, 152 Kan. 460, 105 P.2d 876, 878. Therefore that thought has to be kept in mind in interpreting the terms used in that Act.

The Oxford English Dictionary (1933) states that the word "defile" is of French origin, and that as a noun it means a place where troops could only advance on a narrow front. One of the uses given was "a valley into which there was no passage except by a defile." Another use given in that dictionary for the word defile was a "narrow lane through a woods." Another use given was that of describing a passage with a hill on one side and a morass on the other. The Univeral Dictionary of the English Language defines a "defile" as a "pass through which troops can only march in narrow files." MacMillans Modern Dictionary defines a "defile" as "a long narrow pass." The New Century Dictionary defines a "defile" as "any narrow passage."

In Rogets' International Thesaurus, Sec. 203.03 it is stated that "defile" is connected with narrowness. In Section 302.1 of the same work it is stated that "defile" is connected with "passage" and in Section 266.1 it is stated that the word defile is used in connection with the word "travel." Running all through the definitions is the idea of narrowness and restriction.

Some light is thrown on what meaning should be given to the word "defile" by a study of the entire statute in which it is used. The first part of the statute requires the driver of a motor vehicle to have it under control and on the right hand side of the road on approaching the crest of a hill. Crests of hills are obviously places of danger because of lack of sight distance. Sight distance can also be interfered with by curves. The latter part of the statute in question deals with cases where there is a curve where sight distance is reduced to 200 feet by requiring a horn to be sounded in such cases. Sight distance is also reduced where there is a hill or hills or a slope of a hill or hills or a side of a cliff immediately adjacent or in near proximity to the traveled portion of the road, and where a highway is cut through a hill or a side of a hill or side of a cliff leaving bank or banks immediately adjacent or in the near proximity to the traveled portion of the road. The nearer the proximity the greater would be the reduction in sight distance.

■■■■ In general only the paved or other traveled portion of a highway right of way is used by motor vehicles. In certain cases temporary use of the shoulders is made use of by motor vehicles. However, that portion of the right of way in excess of that taken up by the usual traveled portion and the shoulders is an important and integral part of the entire highway. The topography of that excess portion is of importance on the matter of highway safety. Where the topography is such as to in effect narrow the highway right of way area to the traveled portion and the shoulders the possibility of automobile mishaps and the consequences ensuing therefrom are increased. Such narrowing may be occasioned by a number of conditions. However, the matter of a "de-

file" has to do with narrowing because of a certain type of topography. As used in the statute in question it is believed that the word "defile" refers to those places where the highway right of way area is in effect and for all practical purposes narrowed and restricted to the traveled portion and the shoulders by reason of the near proximity thereto of the side or slope of a hill or cliff or by the sides or slopes thereof; or by a cut through or alongside of a hill or cliff. In the present case the topographical facts were that the highway in question was a narrow pass descending into a valley or a long winding down grade from the top of a cliff or hill. At the point of collision the right of way area had been narrowed and restricted by a high tree covered bank of the side of the cliff or hill on the one side and by a drop-off of 30 to 40 feet on the other or down side of the slope on the other side of the highway. It is believed that at the time of the collision that both Lester Justman and the defendant Delbert Lambert were traveling through a "defile"; that in so traveling it was the statutory duty of both of them to drive on the right hand side of the road; and that the failure of either to do so would constitute negligence per se.

The defendants in the present case requested the following instruction:

"That in the operation of a motor vehicle on the highways of the State without the limits of cities and towns, the operator thereof is under no duty to drive the same on the right hand side of said highway, except upon meeting a motor vehicle coming from the opposite direction, and at all other times said operator may operate said motor vehicle on any portion of the traveled highway."

The Iowa Supreme Court early laid down the rule that outside of cities and towns one may travel in the middle or either side of the traveled way where no other person is passing or about to pass in the opposite direction and that it is only upon meeting that the rule of yielding is invoked. Baker v. Zimmerman, 1917, 179 Iowa 272, 161 N.W. 479. There are a number of Iowa cases in accord.

However, by the enactment of what is now Section 321.364 the Iowa Legislature limited the right of operators of motor vehicles in using other than the right hand side of the road. Under Section 321.364 drivers could not operate motor vehicles on any portion of the highway in defiles or when approaching the crest of a hill or grade. The requested instruction did not except either of those situations either as to Lester Justman or Delbert Lambert. At the time of the collision Lester Justman was driving towards the crest of a hill or grade and Delbert Lambert had a short time before been doing likewise. Lester Justman and the defendant Delbert Lambert each denied under oath that he was attempting to make use of other than the right hand side of the road. If any part of a requested instruction is improper it should not be given. Faatz v. Sullivan, supra.

The defendants urge that the verdict was excessive. The pertinent Iowa statutes in regard to the nature of the action are Sections 611.20 and 611.22 of the Code of Iowa 1946. In Section 611.20, it is provided that all causes of action survive notwithstanding the death of the person entitled to the same. Section 611.22 provides that any action contemplated by Section 611.20 may be brought by the legal representative of the deceased. Those statutes abrogate the common law that the death of a person terminated the action. Boyle v. Bornholtz, 1937, 224 Iowa 90, 275 N.W. 479. The measure of damages is not the same in actions by the injured party and in actions brought by the legal representative. Boyle v. Bornholtz, supra. The measure of damages is the reasonable present value of the decedent's life to his estate. Droullard v. Rudolph, 1929, 207 Iowa 367, 223 N.W. 100. In the present case the Court on the matter of damages for the death of Louis Kemp gave the following instruction:

"If you find that plaintiff is entitled to recover, you will then proceed to determine the amount of her recovery. The measure of recovery for the death of Louis Kemp will be the present worth or value of the estate which the said Louis Kemp would reasonably be expected to have

saved and accumulated from the date of his death if he had lived out the term of his natural life. The measure of recovery in a case of this character is not the sum which, when placed at interest, would yield an amount equal to the income of the decedent at the time of his death, but, as heretofore stated, is that amount which estimated at its present worth, under all the circumstances is disclosed by the evidence, you believe would have come to his estate from the date of his death to the end of which you would find would have been his natural life.

"In estimating such damage, if any, you award the plaintiff, you may and should consider the evidence before you on the expectancy of the life of the decedent, Louis Kemp, his health and physical condition, and all of the evidence bearing on this question of expectancy, the age and occupation of said Louis Kemp at the time of his death, his bodily health and ability to earn money, his habits as to industry, thrift and economy, as have been shown by the evidence, and the contingencies of life, such as ill health, unemployment, increase or diminution of earning capacity as age advances, and all other facts and circumstances as shown by the evidence in this case tending to show the amount, if any, that the estate might have accumulated if Louis Kemp had lived out the term of his natural life."

The jury was also instructed on the matter of mortality tables. No complaint is made of the instructions relating to the manner of damages but the complaint is as to the amount of damages allowed by the jury under that instruction.

■■■■ Louis Kemp at the time of his death was 33 years of age and had an expectancy of 35.15 years. He was a married man with three children. He was a journeyman painter working for substantial wages. The decedent manifested special skill and artistic ability in church decorating. The decedent in addition to working at his regular work, worked part time in a wood-working plant 15 hours or more a week. The decedent had recently started a shop for reconditioning of Venetian blinds, and was operating that in addition

to his other duties. The evidence was to the effect that he was an unusually hard-working, industrious man of excellent habits. In the case of Gregory v. Wabash R. Co., 1904, 126 Iowa 230, 101 N.W. 761, 764, in regard to damages in death cases states: "In such cases, the best that can be done is to direct the jury as to the general basis on which the right to recover is founded, and allow them to fix such sum as is in their judgment reasonable." This Court is unable to hold that the verdict should be interfered with.

■■■■ It was and is the contention of the defendant Creston Transfer Company that it is not liable for the negligence of the defendant Delbert Lambert in operating the tractor-trailer unit at the time in question. The defendant Delbert Lambert was engaged in business at Bradley, Illinois. He was engaged in the business of hauling freight by motor. The trailer of the unit in question was owned by the defendant Delbert Lambert individually while the tractor was owned by the partnership of which he was a member. Delbert Lambert had a permit from the State of Illinois to engage in the motor freight business in that state. He did not have an Interstate Commerce Commission permit permitting him to engage in interstate freight motor transportation. The defendant Creston Transfer Company was engaged in the motor freight transportation business at Grand Rapids, Michigan. The defendant Creston Transfer Company did have an Interstate Commerce Commission permit permitting it to engage in the interstate transportation of freight by motor. On September 28, 1943, the defendant Delbert Lambert entered into a contract with the defendant Creston Transfer Company under which certain specified tractors and trailers were leased to the Creston Transfer Company. The contract provided that all equipment leased to the defendant Creston Transfer Company was to be under "the complete possession, control, direction and dominion of the Creston Transfer Company." The defendant Creston Transfer Company would collect the freight charges on any freight handled on the leased vehicles and from time to time pay the defendant Delbert Lambert, the rent

for the vehicles. It was obvious that the object and purpose of the arrangement was to enable the vehicles owned by Delbert Lambert to be used in hauling freight in interstate commerce under the Interstate Commerce Commission permit of the Creston Transfer Company. Because the relationship between the defendant Delbert Lambert and the defendant Creston Transfer Company was shown by written documents and other undisputed evidence the Court ruled that as a matter of law that the defendant Creston Transfer Company was chargeable with any negligence of Delbert Lambert in the operation of the tractor-trailer unit in this case. The defendant Creston Transfer Company by proper procedure has challenged that ruling. The defendant Creston Transfer Company claims that the defendant Delbert Lambert was an independent contractor and that it is not chargeable with his negligence. However, if it were assumed that the defendant Delbert Lambert was an independent contractor, it is believed that the defendant Creston Transfer Company would still be liable for the damage to the plaintiff occasioned by the defendant Delbert Lambert in operating the tractor-trailer unit in question under its Interstate Commerce Commission permit. In the case of Venuto v. Robinson, 3 Cir., 1941, 118 F.2d 679, certiorari denied, 314 U.S. 627, 62 S.Ct. 58, 86 L.Ed. 504, the situation was that the C. A. Ross, Agent, Inc., was engaged as a common carrier of freight by truck between points in North Carolina and New England. That company had more business than it could handle. One Robinson owned a truck. Robinson and the C. A. Ross, Agent, Inc., entered into a lease arrangement under which Robinson leased the truck to C. A. Ross, Agent, Inc., for hauling freight delivered to the C. A. Ross, Agent, Inc., by shippers for interstate shipment. While driving his truck in New Jersey under those arrangements, Robinson had a collision with two passenger cars which resulted in the death of some of the occupants of the passenger cars. Representatives of those so killed brought an action in the federal district court in New Jersey and judgments were rendered against both Robinson and the C. A. Ross,

Agent, Inc. The C. A. Ross, Agent, Inc., appealed. The judgments were affirmed on appeal. The Third Circuit Court of Appeals held that the law of New Jersey where the collision occurred was applicable. That Court determined that under the law of New Jersey that Robinson was an independent contractor, but held that fact did not relieve C. A. Ross, Agent, Inc., from liability. The court stated (page 682 of 118 F.2d):

"But the determination that Robinson was an independent contractor does not settle the merits of this litigation. There are many situations in the law where an employer of an independent contractor is liable for the results of negligence of the contractor in the carrying out of the undertaking for which he is employed. Among these situations is that where the work to be done may not lawfully be carried on except under a franchise to the contractor's employer. The rule is stated in the Restatement of Torts, § 428: 'An individual or a corporation carrying on an activity which can be lawfully carried on only under a franchise granted by public authority and which involves an unreasonable risk of harm to others, is subject to liability for bodily harm caused to such others by the negligence of a contractor employed to do work in carrying on the activity.'

"The applicability of this rule is, like that of the determination of the servant or contractor question, a matter of New Jersey law. Restatement, Conflict of Laws, § 387, comment c. No New Jersey case has been found dealing directly with the point. But in the absence of direct local authority it seems to us proper to rely upon the Restatement of the Law as evidence of the law of the State.

"That the language above quoted covers the facts of the instant situation cannot be doubted. Inter-state motor carriage is now regulated by elaborate rules and regulations set out in the Motor Carrier Act of 1935 [49 U.S.C.A. § 301 et seq.] and the regulations thereunder. The carriage of freight in high powered motor vehicles on public highways is certainly business attended with very considerable risk. The rule stated has been applied in cases

against railroads to hold a lessor railroad liable even where the relationship has been lessor and lessee without even general control or direction by the lessor over the lessee. See annotation, 28 A.L.R. 122, and following. The application to one employed by a common carrier by motor truck upon the public highways is an even clearer case. See Duncan v. Evans, 1938, 134 Ohio St. 486, 17 N.E.2d 913, affirming Duncan v. Evans, 1937, 60 Ohio App. 265, 20 N.E.2d 729; Bates Motor Transp. Lines, Inc., v. Mayer, 1938, 213 Ind. 664, 14 N.E. 2d 91."

In the case of Hodges v. Johnson, D.C. Va., 1943, 52 F.Supp. 488, one Jocie of Charlotte, N. C., had an Interstate Commerce Commission permit to haul freight by interstate commerce by motor truck. One Johnson also engaged in the trucking business did not have such a permit. Johnson and Jocie entered into a lease arrangement whereby Johnson leased his trucks to Jocie so that Johnson could haul freight in interstate commerce under Jocie's permit. While one of the leased trucks was going through Virginia under that arrangement, a collision occurred between that truck and a passenger car, which resulted in death and injuries to certain of the occupants of the passenger car. An action was brought in the federal district court of Virginia to recover for such death and injuries. The Court held that Johnson was an independent contractor but that Josie was nevertheless liable. The court stated (52 F.Supp. at page 490): "* * * public policy requires that the holder of a franchise or certificate from the Interstate Commerce Commission for the operation of freight vehicles in interstate commerce upon the public highways be held responsible for the operation of such vehicles under said franchise or certificate, by independent contractors of such certificate holders, their servants and agents." See also Frank Martz Coach Co., Inc. v. Hudson Bus Transp. Co., Inc., 1945, 44 A.2d 488, 23 N.J.Misc. 342, and Lakin, Adm'r, v. Willamette Valley & C. R. Co., 1886, 13 Or. 436, 57 Am.Rep. 25.

The collision in the present case having taken place in Iowa, the Iowa law is applicable as to the liability of the parties.

The recent Iowa case of Skutt v. Dillavou, 1944, 234 Iowa 610, 13 N.W.2d 322, 155 A.L.R. 327, is of importance. In that case one Eiben a resident of Nebraska was the owner of a freight-carrying type of truck. The Union Transfer Company with headquarters in Nebraska was engaged in the interstate transportation of freight by motor vehicle under an Interstate Commerce Commission permit. Eiben did not have such a permit. Eiben entered a lease arrangement with the Union Transfer Company under which his truck with him driving it was to haul interstate freight under the permit of the Union Transfer Company. While Eiben was driving his truck across Iowa transporting a cargo for the Union Transfer Company, he had a collision with another motor vehicle. There was then and there still is in effect a statute which now appears as Section 321.498 Code of Iowa 1946, and which provided and provides:

"321.498 Legal effect of use and operation. The use and operation of a motor vehicle in this state on the public highways thereof by a person who is a nonresident of this state shall be deemed:

"1. An agreement by him that he shall be subject to the jurisdiction of the district court of this state over all civil actions and proceedings against him for damages to person or property growing or arising out of such use and operation, and

"2. An appointment by such nonresident of the commissioner of the public safety department of this state as his lawful attorney upon whom may be served all original notices of suit pertaining to such actions and proceedings, and

"3. An agreement by such nonresident that any original notice of suit so served shall be of the same legal force and validity as if personally served on him in this state."

Under Section 321.499 Code of Iowa 1946, it is provided:

"321.499 "Person" defined. The term "person", as used in section 321.498 shall mean:

"1. The owner of the vehicle whether it is being used and operated personally by said owner, or by his agent.

"2. An agent using and operating the vehicle for his principal.

"3. Any person who is in charge of the vehicle and of the use and operation thereof with the express or implied consent of the owner.

"4. The executor or administrator of the estate of the owner or operator of the motor vehicle."

■ In the case of Skutt v. Dillavou, referred to, an action was brought in Iowa against Eiben and the Union Transfer Company for damages growing out of the collision. Notice was served upon them (as on the defendants in the present case) under the provision of said sections 321.498 and 321.499. The Union Transfer Company contended that it was not "in charge of the vehicle and of the use and operation" of it and that hence that it could not be served with notice under the statutes referred to. The Iowa Court overruled the contention of the Union Transfer Company stating (page 324 of 13 N.W.2d): "The vehicle was leased to appellant and was being used and operated for its benefit and in the conduct of its business under its Interstate Commerce Commission permit which constituted the only legal authority for such use and operation." That Court further states (pages 324, 325 of 13 N.W.2d): "Inasmuch as a corporation can only function through the aid and by means of individuals, it must have been intended that a foreign corporation would, in a proper case, be subject to substituted service under our statute, as a 'person in charge of the vehicle and of the use and operation thereof' even though the actual physical operation was by an officer or agent or employee."

It would seem that under this holding of the Iowa Supreme Court that in the present case the defendant Creston Transfer Company was in charge of the truck and of the use and operation of it and that under Section 321.498 was liable "for damages to person or property growing or arising out of such use and operation."

■ The fact that the defendant Delbert Lambert owned part of the unit and a partnership of which he was a member owned the other part of the unit would not prevent the defendant Delbert Lambert from being an employee of the defendant Creston Transfer Company. In the case of Skutt v. Dillavou, just referred to, the Iowa Court stated (page 325 of 13 N.W. 2d): "We can find no warrant in the record for holding Eiben was an independent contractor. His position as driver of his truck was the same as would have been the position of any other driver employed by appellant for that service. He was not driving it as its owner but as agent or employee of appellant."

In the present case it is the holding of the Court that the defendant Creston Transfer Company is legally chargeable with any negligence of the defendant Delbert Lambert at the time of the collision.

The motions of the defendant Creston Transfer Company and the defendant Delbert Lambert for a new trial are overruled and denied.