Alice Marlene MILLER, Petitioner,

v.

N. J. BARNETT, W. Thurman Shayler, d/b/a W. Thurman Shayler, and the State Industrial Commission, Respondents.

No. 36423.

Supreme Court of Oklahoma.

March 15, 1955.

Rehearing Denied June 7, 1955.

Application for Leave to File Second Petition for Rehearing Denied June 28, 1955.

Howard C. Triggs, Oklahoma City, for petitioner.

Looney, Watts, Ross, Looney & Nichols, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

HALLEY, Justice.

This is a proceeding brought by Alice Marlene Miller to review an order of the State Industrial Commission denying her an award sought under the Death Benefit Provisions of the Workmen's Compensation Law, 85 O.S.1951 § 1 et seq. Cletis Miller was killed on February 7, 1952. He

was the husband of claimant. He was driving a truck for N. J. Barnett and W. Thurman Shayler, doing business as W. Thurman Shayler, when he was killed in an automobile collision at Southeast 15th and Byers in Oklahoma City. Alice Marlene Miller will be referred to as claimant, her deceased husband as Miller, and the employer as respondent.

W. Thurman Shayler testified that Miller was employed as a truck driver for respondent and that he signed a lease agreement with respondent; that he was to make a trip from Chicago to Oklahoma City; that his agreement terminated when he unloaded the freight; that Miller was paid a percentage of the freight; that Miller came into the office between 5 and 5:15 o'clock P.M. February 7, 1952, and stated that he had some freight left over on his trailer; and that Miller was told he would have to wait until the next morning to get the freight bill which would probably be in the mail. Miller was killed between 6 and 6:30 o'clock that same evening. There was still some undelivered freight on the trailer of the truck which was parked at approximately 5:15 o'clock P.M. on February 7, 1952, on the New State Oil Company's lot near the premises of respondent. This freight was delivered in due course by respondent; that respondent does not have any docks or place to keep trucks or trailers. The truck was detached from the trailer when the collision causing the death occurred; that Miller's job was fulfilled when the truck was emptied of all of its freight and regardless of when this was done the consideration paid Miller was the same.

Claimant testified that Miller arrived home from Chicago on Monday before he was killed on Thursday; that he could not deliver the freight due to some labor difficulties. On Tuesday she went with him to Clinton to unload some freight and came back with him to Oklahoma City the same day; that on Thursday, February 7th, at 5 P.M. he called her over the telephone. She asked him if he was through unloading freight for that day and he said no that he wasn't finished at that time, that he had some other business to attend to and it would be quite a while before he

could come home; that he had to see Joe Manley and see if he could help him unload the next morning; that she never saw him again until after the accident.

Respondent then introduced a copy of the written contract denominated lease agreement between Cletis Miller, as lessor and Shayler Truck Lines as lessee; that by its terms the lessor, Miller, was to furnish the State and Federal Certificates of Operation as a common carrier and was to pay all the expenses of operation including the purchase of gasoline and oil.

The order denying the award is in part as follows:

"That deceased was not an employee of respondent at the time he sustained his accidental personal injury, but he was an independent contractor.

"That claimant was engaged in the employment which he had contracted to do for respondent at the time he sustained his fatal accident, and that such accident arose out of such contractual employment and in the course thereof.

"That claimant's claim for benefits is denied for the reason that the Industrial Commission has no jurisdiction to hear and determine the merits of this cause for the reason above stated.

"It is therefore ordered that claimant's claim for benefits under the Death Benefits Provision of the Workmen's Compensation Law is denied."

The single issue is that the State Industrial Commission erred on a matter of law in holding that Miller was an independent contractor and not an employee of respondent. The following statement is made by claimant:

"The Shayler Truck Line is admittedly a common carrier of motor freight under I. C. C. and state regulatory bodies. As such a carrier they operate from fixed termani to fixed termani, over a regular route, on regular schedules, as is provided in the authorities, and permits, which all such common carriers have."

We do not think the evidence supports the broad statement and there is no other

evidence aside from that reviewed above of the witness Shayler and claimant except the contract introduced in evidence.

In support of her argument claimant cites among other cases Brown v. L. H. Bottoms Truck Lines, Inc., 227 N.C. 299, 42 S.E.2d 71; Steffens v. Continental Freight Forwarders Co., Inc., 66 Ohio App. 534, 35 N.E.2d 734; Towers v. Watson Bros. Transp. Co., 229 Iowa 387, 294 N.W. 594; Skutt v. Dillavou, 234 Iowa 610, 13 N.W.2d 322, 155 A.L.R. 327. We have examined each one of these cases cited including those set out above. All of these cases can be disposed of on the basis that the particular fact situation justified the finding of the boards, or the submission of the case to the jury, dependent upon the case involved, except Brown v. L. H. Bottoms Truck Lines, Inc., and Steffens v. Continental Freight Forwarders Co., Inc., supra. Although the evidence was more fully developed in those two cases than in the case under consideration the basis of each opinion is that the truck owner or driver is by law made a servant of the common carrier. In both of these cases the contract was similar to the contract in the case under consideration. The rule therein is based upon the decisions of the Supreme Court of the United States and a consideration of the rules of operation under certificates of the Interstate Commerce Commission. All of these point out that the truck driver or owner is the servant of the operator because he operates under their certificates and is not permitted to operate under any certificate of his own.

■ We cannot accept this theory in the light of the holdings of our own Court. We have stated that before an award may be entered the relation of employer and employee must be established; that it is a question to be determined under definite rules. As stated in Producers' Lumber Co. v. Butler, 87 Okl. 172, 209 P. 738, in the first paragraph of the syllabus:

"An 'independent contractor' is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the con-trol of his employer except as to the result of the work."

In Yellow Cab Co. v. Wills, 199 Okl. 272, 185 P.2d 689, in the first paragraph of the syllabus it is said:

"In determining whether an agent is an employee or an independent contractor, the controlling or decisive test is whether the principal has the right to control the physical details of the work to be done by the agent, or whether the latter represents the former only as to the result to be accomplished."

We have many times stated that the primary test is the right to direct and control. Yellow Cab Co. v. Wills, supra; Harrill v. State Industrial Commission, 208 Okl. 666, 258 P.2d 624; Southland Cotton Oil Co. v. Pritchett, 167 Okl. 6, 27 P.2d 819; Hobart Lumber Co. v. Fells, 190 Okl. 106, 122 P.2d 390.

■ We find upon examination of the evidence introduced no situation indicating the relationship of master and servant between Miller and respondent. He chose his own time to unload the freight and when he found conditions not suitable to unloading the freight in Oklahoma City went to Clinton and came back and made his own decision as to when he should unload the rest of the freight. He likewise made his own decision on the night of February 7, 1952, when he determined that it would be necessary for someone to help him unload the freight the next day. There was no change in the consideration to be paid to him regardless of when the freight was unloaded or delivered and Miller made his own decision in all of these matters subsequent to the time he arrived in Oklahoma City from Chicago.

Upon an independent review of all of the evidence, see Williams v. Branum, 192 Okl. 129, 134 P.2d 352, we find that the order of the State Industrial Commission was properly made.

The order denying the award is sustained.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, BLACKBIRD, and JACKSON, JJ., concur.

ARNOLD, J., dissents.